GERTRUDE GONIER *vs.* THE CHASE COMPANIES, INCORPORATED (CHASE METAL WORKS).

Third Judicial District, Bridgeport, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

If an employee is employed where there is danger of falling and of serious injury therefrom, an injury occasioned by a fall is an injury arising out of and in the course of the employment within the meaning of our Workmen's Compensation Act, notwithstanding the fact that the fall may have been caused by some physical condition, such as vertigo, unconnected with the employment.

Gonier *v.* Chase Companies, Inc.

An employee who worked as a painter and had from time to time been subject to spells of fainting or unconsciousness, was injured and died as a result of a fall from a staging upon which he was at work some eleven feet above the surface, which was covered with wooden paving blocks. He had shortly previous to his fall complained of indigestion and had taken a remedy therefor. *Held* that the danger of falling and the liability of resulting injury was a risk arising out of the conditions of his employment; that the proximate cause of the injury was the fall, and of the fall, the indigestion, and therefore his dependent was entitled to compensation.

The defense to a claim for compensation, of wilful and serious misconduct upon the part of the employee, is an affirmative one and the burden of establishing it is on the employer.

Misconduct of this character must be improper or wrong, not merely trivial but grave and aggravated in character, exposing the employee to serious injury; and it also must be wilful, that is, either intentional—done purposely with knowledge—or of such a character as to evince a reckless disregard of consequences to himself by him who is guilty of it.

Whether such misconduct exists is primarily a question of fact, and it is to be determined from the nature of the act and not from its consequences.

Negligence, ordinary care, or misconduct which is thoughtless, heedless, inadvertent or of the moment, or which arises from an error of judgment; cannot be serious and wilful misconduct.

Nor will every violation of a statute or a public regulation, or a rule, regulation, order, or instruction of an employer, constitute such misconduct; if by direct proof, or out of the circumstances, it appears to have been the result of thoughtlessness or inadvertence, the violation cannot be held to have been wilful.

It appeared that the deceased, about three months before the date of his injury, had been advised to discontinue working in high places because of his liability to have one of these attacks of unconsciousness. The Commissioner found that the deceased was not guilty of serious and wilful misconduct. *Held* that the act of the deceased in continuing work might have been in entire forgetfulness of the warning, and hence not even serious misconduct; that aside from this, it could not, under the circumstances, be found to have been wilful, that is, done purposely with knowledge, or done with a reckless disregard of consequences for his own safety, and that therefore the finding of the Commissioner should stand.

Argued October 27th—decided November 30th, 1921.

APPEAL by the defendant from a finding and award of the Compensation Commissioner of the fifth district

in favor of the plaintiff, taken to and reserved by the Superior Court in New Haven County, *Avery, J.,* upon the Commissioner's finding, for the advice of this court. *Superior Court advised to affirm the award of the Compensation Commissioner.*

Joseph Gonier, the deceased, had a contract of employment with the defendant for more than twenty-six weeks next before April 15th, 1920, and both employer and employee were subject to the Connecticut Compensation Act.

The deceased had worked as a painter for defendant for over two years and had painted structures at a height above the ground without being affected by it. He began in September, 1918, visiting physicians for their prescription. None of the physicians told him his trouble, indeed they did not agree as to this. From time to time prior to April 15th, 1920, he had spells of unconsciousness, but he had always been able to anticipate these and take firm hold of some support, and after temporary loss of consciousness he would resume work. The defendant knew that the deceased suffered from indigestion, and that on one occasion when he was at home he had a spell of fainting or unconsciousness. About three months before the date of his injury a physician had advised him to discontinue working in high places, because of the liability to have one of these attacks. He replied that he had painted all his life, and knew no other kind of work, and he had to continue in the line of his own occupation.

On April 15th, 1920, he was given his choice between inside work, and outside on a staging some eleven feet above the surface, which was covered with wooden paving blocks. He was not feeling well that morning and preferred working out of doors. He worked awhile and then went to defendant's dispensary and said he had indigestion. The nurse in charge gave him a dose

of rhubarb and soda, and he took this and apparently felt relieved and resumed his work. The deceased believed that his trouble was indigestion, and several times, for that complaint, the nurse had given him a similar remedy which had relieved him. He also frequently had complained of his stomach. It did not appear that he had a disease which in the absence of this fall, would have been fatal, within any brief period of time. He was, during this morning while at work, jovial and joking with his fellow workmen. On returning from the dispensary he worked awhile, and then, apparently again feeling uncomfortable, he sat down on the platform where he was painting, smoked a cigarette, stood up or partly stood up to resume work, and then fell backward to the surface below and fractured his skull, as a result of the fall, from which he died.

*Benjamin I. Spock,* for the defendant.

*Francis W. Carroll,* for the plaintiff.

WHEELER, C. J. The reservation brings up for review two points.

*First.* Did the death of Gonier resulting from a fall from the staging, caused by a temporary unconsciousness due to disease, constitute an injury arising out of his employment? "An injury arises out of an employment when it occurs in the course of the employment and is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed." *Marchiatello* v. *Lynch Realty Co.,* 94 Conn. 260, 263, 108 Atl. 799. The injury is the result of a risk involved in or connected with the employment, when there is present in the circumstances of the accident some causal connection between the

employment, or the conditions under which it is required to be performed, and the injury. We pointed out in *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 309, 97 Atl. 320, that "the term 'arising out of' in this Act points to the origin or cause of the injury." The immediate question before us is whether the death of the decedent was caused by a risk involved in the conditions of his employment; and that resolves itself to a determination of whether the fall or the attack of vertigo caused the injury. In *Monroe* v. *Hartford Street Ry. Co.*, 76 Conn. 201, 207, 56 Atl. 498, HAMERSLEY, J., defines a proximate cause thus: "When an event is followed in natural sequence by a result it is adapted to produce, or aid in producing, that result is a consequence of the event, and the event is the cause of the result." The fall of Gonier was the event, and it was followed by his injury which the fall was adapted to produce. Later, in *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888, BALDWIN, C. J., defined proximate cause thus: "That only is a proximate cause of an event, juridically considered, which, in a natural sequence, unbroken by any new and intervening cause, produces that event, and without which that event would not have occurred." Applying these definitions to the facts of this case, we must hold that the proximate cause of the decedent's injury was his fall, and the proximate cause of his fall was his attack of indigestion. Whether his physical condition had been idiopathic, or due to his own fault, or to something that had occurred while he was outside the course of his employment, if by reason of it he fell and injured himself, the proximate cause of the injury in each case was the fall, and of the fall, the physical condition. In his discussion of this subject in *Fiarenzo* v. *Richards & Co.*, 93 Conn. 581, 586, 107 Atl. 563, GAGER, J., quotes the maxim of Lord Bacon: "It were

infinite for the law to consider the causes of causes, and their impulsions one of another; therefore it contenteth itself with the immediate cause, and judgeth the act by that, without looking at any further degree." And this has been the underlying principle of our decisions in enforcing liability for torts. In the *Fiarenzo* case, at page 585, it is said: "Had the deceased slipped and been injured while walking from one place of work to another on his employer's premises in the course of his work, it would hardly be claimed that the injury did not arise out of the employment." This could not have been asserted unless we had been of the opinion that the fall and not the slipping caused the injury. *Reeves v. Dady Corporation,* 95 Conn. 627, 631, 113 Atl. 162, was decided upon the point that at the time the decedent fell from the doorway he had temporarily departed from the course of his employment. "In this case," we say, "the decedent did not fall out of the doorway through carelessness or because of any disability which he brought to his employment." The inference, although unexpressed, seems to us plain that if he had fallen because of a physical disability which he had brought to his employment, as vertigo, an epileptic fit, or heart disease, the resulting injury would have been one arising out of the employment. And this would have been so because the fall would have caused the injury and not the physical disability.

We have examined all of the cases upon this subject. The courts of Great Britain have not uniformly followed *Wicks v. Dowell & Co.,* L. R. (1905) 2 K. B. Div. 225, but finally British authority has adopted its doctrine. The case was brought to secure compensation for a workman who, while employed in unloading coal from a ship, was, while at his work, seized with an epileptic fit to which he was subject, and fell into the hold of the ship and was injured. In discussing whether

the injury "arose out of the employment," Collins, M. R., said: "A man is picked up at the bottom of the hold of a ship suffering from injuries: what is the cause of his condition? The proximate cause obviously is that he has fallen from a height. But it is suggested that if the occurrence is analyzed, it will be seen that the accident was caused by the idiopathic disease from which the man was suffering, and that therefore the accident did not arise out of his employment. At that point the authorities come in, to the effect that, although the cause of the fall was a fit, the cause of the injuries was the fall itself, and they are direct authorities that the injury in the present case was caused by an accident. Then did the accident arise out of the man's employment? When we get rid of the confusion caused by the fact that the fall was originally caused by the fit and the confusion involved in not dissociating the injury and its actual physical cause from the more remote cause, that is to say, from the fit, the difficulty arising from the words 'out of the employment' is removed. How does it come about in the present case that the accident arose out of the employment? Because by the conditions of his employment the workman was bound to stand on the edge of what I may style a precipice, and if in that position he was seized with a fit he would almost necessarily fall over. If that is so, the accident was caused by his necessary proximity to the precipice, for the fall was brought about by the necessity for his standing in that position. Upon the authorities I think the case is clear: an accident does not cease to be such because its remote cause was the idiopathic condition of the injured man; we must dissociate that idiopathic condition from the other facts and remember that he was obliged to run the risk by the very nature of his employment, and that the dangerous fall was brought about by the condi-

tions of that employment." The reasoning of the
Master of the Rolls applies the rule of proximate cause
in accordance with the view of this court to which we
have referred. In *Wright & Greig, Ltd.* v. *M'Kendry*
(1918), 56 Scot. L. Rep. 39, 41, 12 B. W. C. C. 410, the
decedent fell upon the slightly sloping floor of his
store and fractured his skull. The cause of his fall was a
uræmic fit arising from his kidneys. In supporting the
judgment of the lower court that the fall caused the
injury and that that arose out of the employment,
Lord Shaw said: "The expression [arising out of the
employment], in my opinion, applies to the employ-
ment as such—to its nature, its conditions, its obliga-
tions, and its incidents. If by reason of any of these
the workman is brought within the zone of special
danger and so injured or killed, it appears to me that
the broad words of the statute . . . apply. . . . In
this case I think the workman was by the conditions and
incidents of his employment engaged at the time of the
accident at a place which turned out to be a place of
special danger, because but for the hard concrete floor
the fatality would not or might not have occurred."
And Lord Parmoor said: "If the conditions of his
employment . . . exposes him at the time . . . of
the accident to the injury . . . then although the
accident is not consequent on and has no causal relation
to the work on which the workman is employed, such
accident arises out of his employment, as incident, not
to the . . . work, but to the . . . risks of the . . .
position in which by the conditions of his employment
he is obliged to work." And Lord Dundas said: "In
the case before us the immediate cause of this man's
fatal injury was the fall. If the fall was an accident
arising out of the employment, then it is irrelevant to
consider that the cause of the fall was a fit." In *Thom*
or *Simpson* v. *Sinclair*, L. R. (1917) App. Cas. 127, 144,

House of Lords, Scottish, 10 B. W. C. C. 220, 227, a workman was injured by the roof of the building in which he was working falling upon him. The roof fell because the wall of an adjoining building fell on the roof. The court held that the injury did arise out of the employment. Lord Parmoor said: "Such accident arises out of his employment, as incident, not to the character of the work, but to the dangers and risks of the particular building or position in which by the conditions of his employment he is obliged to work." *Wicks* v. *Dowell & Co.*, L. R. (1905), 2 K. B. Div. 225, is approved and followed in *Peoria Railway Terminal Co.* v. *Industrial Board*, 279 Ill. 352, 360, 116 N. E. 651; *Vulcan Detinning Co.* v. *Industrial Com.*, 295 Ill. 141, 128 N. E. 917.

Some of the cases which plaintiff cites do not raise our precise question. For example, *Carroll* v. *What Cheer Stables Co.*, 38 R. I. 421, 96 Atl. 208, is not a case where the injury was caused solely by the workman's previously diseased condition, but his fall was due to dizziness induced by disease. On similarly related facts the courts of California, New York, Kansas and Michigan have reached a different conclusion, and their conclusions would lead them to hold in the instant case that the injury to Gonier was caused by his attack of indigestion and did not arise out of his employment. The latest cases in these jurisdictions which reach a contrary conclusion to that we have reached, are: *Cox* v. *Kansas City Refining Co.* (1921), 108 Kan. 320, 195 Pac. 863; *Eastman Co.* v. *Industrial Acc. Com.* (Cal. 1921), 200 Pac. Rep. 17; *Van Gorder* v. *Packard Motorcar Co.*, 195 Mich. 588, 162 N. W. 107; *Joseph* v. *United Kimona Co.*, 194 N. Y. App. Div. 568.

Gonier's employment brought him upon this scaffolding, from which, if he fell, he was in danger of serious injury. The danger of falling and the liability of re-

sulting injury was a risk arising out of the conditions of his employment.

*Second.* Did Gonier's conduct in working upon this staging constitute wilful and serious misconduct? He knew that if he fell from the staging he might seriously injure himself. So far as the finding discloses he had no disease other than indigestion. He knew he had this physical ailment, and that he had had spells of temporary unconsciousness while at his work as a result of it, but he had always been able to anticipate these attacks and protect himself during them, and after a temporary loss of consciousness resume work. He had had an attack of indigestion on this morning, but it does not appear to have been severe. If the case rested upon these facts, they could not be held to establish even mere negligence in the deceased. No warning had been given the deceased against working upon this elevated staging, except the advice to him to discontinue working in high places by Dr. Godfrey some three months before, and the case upon this point is almost wholly dependent upon whether his work on this staging, after this advice, was as matter of law the "wilful and serious misconduct" of the statute which prevents the award of compensation to his dependent. Misconduct is any improper or wrong conduct. And when such misconduct is not trivial but grave in character, it becomes the serious misconduct of the statute, that is, improper conduct of a grave and aggravated character. Whether misconduct is serious is to be determined from its nature and not from its consequences. *Johnson* v. *Marshall, Sons & Co., Ltd.,* L. R. (1906) App. Cas. 409, 22 Times L. Rep. 565. Misconduct which exposed the deceased to serious injury would be serious misconduct. Not only must the misconduct be of this grave character, but under the statute it must also be wilful. By wilful misconduct is

meant either intentional misconduct, that is, such as is done purposely with knowledge, or misconduct of such a character as to evince a reckless disregard of consequences to himself by him who is guilty of it. *Burns' Case,* 218 Mass. 8, 105 N. E. 601; *Nickerson's Case,* 218 Mass. 158, 160, 105 N. E. 604; *General American Tank Car Corp.* v. *Borchardt,* 69 Ind. App. 580, 122 N. E. 433, 435; note to *Clem* v. *Chalmers Motor Co.,* L. R. A. 1916A, 355 (178 Mich. 340).

We have had occasion to consider these terms of our statute several times. With one exception they were cases of mere negligence, and we held, with all authority, that wilful and serious misconduct means something more than ordinary negligence. *Fiarenzo* v. *Richards & Co.,* 93 Conn. 581, 107 Atl. 563. Ordinary negligence could never be even serious misconduct, much less wilful misconduct; and although gross negligence might present an instance of serious misconduct, it could never present a case of wilful misconduct, as our definition of wilful misconduct clearly indicates, and the authorities so hold. *Burns' Case,* 218 Mass. 8, 105 N. E. 601; *Nickerson's Case,* 218 Mass. 158, 105 N. E. 604; *Gignac* v. *Studebaker Corporation,* 186 Mich. 574, 152 N. W. 1037; *Riley's Case,* 227 Mass. 55 (*Riley* v. *Standard Acc. Ins. Co.* [1917], 116 N. E. 259). No misconduct which is thoughtless, heedless, inadvertent or of the moment, and none which arises from an error of judgment, can be "wilful and serious misconduct." *Johnson* v. *Marshall, Sons & Co.,* 94 Law T. Rep. 828; *Baltimore Car Foundry Co.* v. *Ruzicka,* 132 Md. 491, 104 Atl. 167. Nor will every violation of a statute or a public regulation, or a rule, regulation, order or instruction of an employer, constitute wilful and serious misconduct. In *Merlino* v. *Connecticut Quarries Co.,* 93 Conn. 57, 60, 104 Atl. 396, we said: "Merlino's failure to obey this rule was a careless and perhaps a

negligent omission, but it was not such serious and wilful misconduct as amounts to a defense under the Workmen's Compensation Act." *United States Fidelity & Guaranty Co.* v. *Industrial Acc. Com.*, 174 Cal. 616, 163 Pac. 1013. Whether one violation or repeated violations will constitute wilful and serious misconduct must depend upon the circumstances, notably upon the nature of the misconduct and the character of the statute, regulation, rule, order or instruction violated. Each case must be weighed and determined by its own circumstances. What is serious disconduct is primarily a question of fact, as is a finding of negligence. So, similarly, what is wilful misconduct is a question of fact. *Nickerson's Case*, 218 Mass. 158, 105 N. E. 604; *George* v. *Glasgow Coal Co., Ltd.*, L. R. (1909) App. Cas. 123.

In reversing an order reducing compensation under a statute for wilful failure to obey any reasonable rule of the employer adopted for the safety of the employee, the Supreme Court of Wisconsin said: "We are of opinion that there was no wilful failure to obey a rule of the employer by Healey, within the meaning of the statute. Mere violation of a rule does not always constitute wilful misconduct. To have that effect the disobedience must have been deliberate, not merely a thoughtless act on the spur of the moment." *Frint Motorcar Co.* v. *Industrial Commission*, 168 Wis. 436, 439, 170 N. W. 285, 286; *Diestelhorst* v. *Industrial Acc. Com.*, 32 Cal. App. 771, 164 Pac. 44. The breach of a rule by one who knows at the time that he is breaking the rule is a wilful breach; but if by direct proof, or out of the circumstances, it appears to have been the result of thoughtlessness or inadvertence, the breach cannot be held to have been wilful. A conclusion that certain facts constitute wilful and serious misconduct, is reviewable by this court when the record presents all the facts and the alleged error is properly assigned.

*Nolan* v. *New York, N. H. & H. R. Co.,* 70 Conn. 159, 174, 39 Atl. 115. The defense of wilful and serious misconduct is an affirmative one. The burden of establishing it is on the employer. *United States Fidelity & Guaranty Co.* v. *Industrial Acc. Com.,* 174 Cal. 616, 163 Pac. 1013. Since the finding is one of fact, the court on review will not hold this conclusion erroneous unless the facts clearly show this to be so; and in reaching its decision the reviewing court will keep before it the fact that the employer has the duty of proving this defense.

The doctor's warning to the deceased three months before the accident, so far as the circumstances show, may not have been fully understood or deemed important by the deceased. The attack of what he believed to be indigestion had yielded to simple treatment, he had had no indication of one of these spells of unconsciousness, he felt relieved and able to begin work, he was in good spirits, and as he stood up to continue his work he became faint and fell. So far as the record shows, the doctor's advice may not have been in his memory at this time; his act in continuing work upon the staging may have been in entire forgetfulness of this warning. If his conduct could be held to have been misconduct, it would be difficult to hold it to have been serious misconduct. But aside from this, it could not be held to have been wilful. He did not continue to work knowing at this time of his liability to suffer one of these spells of unconsciousness which would be likely to cause him to fall, so that his course could not be found to have been done purposely with knowledge. Neither could it be said that the circumstances show on his part a reckless disregard of consequences for his own safety.

The Superior Court is advised to affirm the award of the Compensation Commissioner.

In this opinion the other judges concurred.