CARMELO MANCINI vs. THE SCOVILL MANUFACTURING COMPANY.

Third Judicial District, New Haven, January Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, JS.

The conclusion that an employee who claims compensation, was, or was not, guilty of "wilful and serious misconduct" under § 5341, is primarily one of fact for the Commissioner to make; but where his conclusion, as in the present case, is drawn from the subordinate facts detailed in the record, it may be reviewed by this court on appeal or reservation.

A finding that the employee intended to, and did, violate the rule of safety which had been explained to her, is equivalent to a finding that her conduct was "wilful," within the meaning of that word as used in the statute. But until it also appears from the record, either by an express finding or upon facts from which such an inference must necessarily be drawn, that the employee knew and appreciated that such misconduct would expose her to serious injury,

and with such knowledge and appreciation did the act in violation of her instructions, it cannot be said that her acts constituted the "serious" misconduct which would bar her from obtaining compensation.

The plaintiff, an Italian woman with a limited knowledge of English, was assigned work at a drop-press for shaping pieces of brass into the desired form,—a somewhat different work from that which she had been doing. By a physical demonstration she was shown how to operate the press so as to avoid injury to her fingers when the hammer dropped, and was given forceps to use in placing and removing the brass pieces. The following day she was observed to be using her fingers for this purpose, and was told in Italian by a foreman not to do this but to use the forceps. She fully understood what the foreman said, and when he left her she was using the forceps in her work. No other or further attempt was made to make her understand and appreciate the danger of the work, nor the reason for the rule requiring the use of forceps while operating the press. Somewhat later the same day she again used her fingers instead of forceps in placing and removing the metal pieces, and while so doing she pressed the foot-lever, the hammer fell and injured the index finger of her left hand. The Commissioner, with some hesitation, ruled that while her behavior was intentional and therefore "wilful," she had not been guilty of such "serious misconduct" as to deprive her of the right to recover compensation. *Held*, upon a reservation of the case by the Superior Court, that in the absence of any finding that the plaintiff did appreciate that the doing of this work in the manner prohibited would expose her to serious injury, it could not be said that the conclusion of the Commissioner was erroneous, but on the contrary, that it accorded with the construction placed upon this phrase by the decisions of this court. (*One judge dissenting.*)

"Serious misconduct," as contemplated by the statute, means wrong or improper conduct of a grave and aggravated character, which is to be determined from its nature and not from its consequences.

The exposure of one's person to injury should be regarded as "serious misconduct" on the part of an employee, if the circumstances indicate that, in the light of his knowledge, the risk was of a grave and aggravated character and taken with appreciation of that fact.

"Wilful misconduct" differs from "serious misconduct," in that it may be any kind of conduct which is either merely wrong or improper, or of a grave and aggravated nature, provided it be intentional or such as evinces a reckless disregard of consequences to the actor; and therefore misconduct which is the result of thoughtlessness, inadvertence, or error of judgment, is not "wilful misconduct," which, as applied to the violation of a safety-rule by an employee, must indicate a deliberate intent.

What a Compensation Commissioner deems to be the single legal question involved in the hearing before him, does not limit the field of inquiry of the Superior Court, nor the scope of the decision of this court upon reservation or appeal. The ultimate question to be decided, both by the Superior Court and by this court, is whether the award is erroneous or not upon the facts as found by the Commissioner.

Submitted on briefs January 24th—decided March 1st, 1923.

PRO FORMA AWARD in favor of the plaintiff, by the Compensation Commissioner of the fifth district, filed by him in the Superior Court in New Haven County and reserved by that court, *Haines, J.,* for the advice of this court. *Superior court advised to affirm the award of the Compensation Commissioner.*

The plaintiff is an Italian of fair intelligence, having a limited knowledge of the English language. She was in the employ of the defendant, and on the afternoon of February 21st, 1922, was set at work at a machine which shaped a portion of a socket for an electric light,—work of a somewhat different character from that which she had been doing. This work consisted of placing upon a die a piece of brass and tripping the machine by a foot-lever and bringing the machine down and forming the piece of brass into the desired shape. When set at work she was clearly instructed by means of a physical demonstration as to the method in which the work should be performed, by a fellow workman who did not speak Italian. She was provided with a pair of forceps. The next morning (February 22d) a foreman, who spoke both Italian and English, found her working without the forceps, and told her in Italian not to use her fingers in placing work on and taking it off the machine as she was doing, but to use the forceps. She thoroughly understood what he said, and when he left her she was using the forceps in her work. The use of the forceps absolutely

prevents the employee injuring her fingers under the die. When an employee is new to such work the use of the forceps tends to slow down the work, which is paid for on a piece basis. As soon as the operator acquires proficiency in the use of the forceps, she can perform this work as rapidly by the use of the forceps as by the fingers. When the operator places the material on and takes it off the machine with the thumb and fingers instead of the forceps, there is very serious danger of injury. Some of the more experienced operators do this work by putting the thumb and first finger on the sides of the piece of brass. Whenever an employee is seen doing this she is stopped. This method exposes the operator to some risk, but not as much as when done with the thumb and middle finger on the sides of the shell and the index finger on the top. An inexperienced operator can do this work more rapidly by the use of the fingers than by the use of the forceps, and is far more likely to get injured in so doing than an experienced operator. Later on the same day, February 22d, and after being thus instructed and warned, the plaintiff tripped her foot press with the foot-lever when she was not using the forceps and when she had her left index-finger on the top of the shell to be re-formed, and the die machine descended and caught and injured her left index-finger. The plaintiff in doing as she did, did not intend any harm to herself, but she did intend to, and did, violate the rule which had been so recently explained to her and which she then had in mind, and she did this not through carelessness. The defendant had a rule forbidding the employees at this class of work to use their fingers in placing the material on, and taking it off, the die. The rule was a reasonable safety-rule and is customarily enforced by defendant so far as such rule can be enforced.

*Albert P. Bradstreet,* for the plaintiff.

*William E. Thoms, Arthur F. Ells* and *Carroll C. Hincks,* for the defendant.

WHEELER, C. J.   This is a reservation by the Superior Court under General Statutes, § 5383, as amended by the Public Acts of 1919, Chapter 142, § 16, because the court was of opinion that the decision involved principles of law which were not free from reasonable doubt, and which public interest required should be determined by this court, in order that a definite rule be established applicable to future cases.

In the view of the Compensation Commissioner, whose finding and award was appealed from, the single legal question involved was "whether the violation of a reasonable safety-rule which had been brought to the attention of the claimant and which was customarily enforced is, under the laws of Connecticut, the equivalent of serious and wilful misconduct." The Commissioner's view of the single legal question involved did not limit the field of inquiry of the Superior Court, nor does it limit the scope of our decision upon a reservation by, or an appeal from, the Superior Court. The Superior Court's ultimate duty on appeal was to decide whether the award was erroneous, and our duty, upon an appeal or reservation of this character, is to make a like determination, and to make it upon the facts as found by the Commissioner.

The single question upon this reservation is whether the conclusion of the Commissioner, that there was no wilful and serious misconduct on the part of the plaintiff, was erroneous or not. "A conclusion that certain facts constitute wilful and serious misconduct, is reviewable by this court when the record presents all the facts and the alleged error is properly assigned."

*Gonier* v. *Chase Companies, Inc.,* 97 Conn. 46, 57, 115
Atl. 677. Primarily this conclusion is one of fact for
the Commissioner to make as one of fact, and neither
the Superior Court nor this court can on review hold the
conclusion of the Commissioner erroneous unless the
facts clearly show this. The Commissioner has not
specifically found this conclusion, but from his memo-
randum and the *pro forma* judgment rendered by him
it is clear that he reached this conclusion, though with
doubt. The Commissioner refers in his memorandum
to the fact that the General Assembly adopted the
greater part of the recommendations of the Commis-
sioners as made in the first report to the Governor
for the year ending September 30th, 1914, but failed
to adopt, and has since failed to adopt, their fifteenth
recommendation, viz: "Where it shall appear to the
Commissioner that any injury was caused by a failure
to observe a reasonable rule of safety, properly brought
to the attention of the employee, or by reason of an
employee disconnecting or rendering inoperative any
safety device, the Commissioner may in his discretion
find that the violation of such rule, or the disconnecting
or rendering inoperative of such device, amounts to
serious and wilful misconduct." Had this recom-
mendation been made a part of the Compensation
Act, any single violation of a safety-rule, or any single
act rendering inoperative a safety-device, might, in
the discretion of the Commissioner, have been held
to be the serious and wilful misconduct of the statute.
The act might not have been either ordinary or gross
negligence, and might have been heedless, or thought-
less, or a mere error of judgment. It would practically
have left to the uncontrolled discretion of the Com-
missioner in every case the determination of the issue
of "wilful and serious misconduct." The failure of the
General Assembly to adopt this recommendation is

significant of the legislative understanding that this phrase had a far different meaning from that indicated by this recommendation. The legislative understanding probably coincides with the interpretation placed upon this phrase by us from the beginning.

We need not add to the discussion of the meaning of this phrase in *Gonier* v. *Chase Companies, Inc.*, 97 Conn. 46, 115 Atl. 677, save in one particular. Misconduct, as we there say, is wrong or improper conduct, and serious misconduct is wrong or improper conduct of a grave and aggravated character, and this is to be determined from its nature and not from its consequences. The exposure of himself to serious injury would be wrong or improper conduct, if the injured employee appreciated at the time of injury that he was exposing himself to serious injury. Such an exposure by one who had no adequate appreciation of the liability to such injury would not amount to serious misconduct. The exposure by an employee of himself to injury would be misconduct if he knew of and appreciated his liability to injury, and would be serious misconduct if the circumstances indicated that the misconduct, in the light of his knowledge, was of a grave and aggravated character, and that he appreciated this fact. In *Gonier* v. *Chase Companies, Inc.*, we say, on page 55: "Misconduct which exposed the deceased to serious injury would be serious misconduct." We should have used "might" for "would" to express the idea of the context. Misconduct which exposed an employee to serious injury might or might not be serious misconduct, depending upon whether the misconduct was of a grave and aggravated character, and whether its character was known to and appreciated by the employee. Wilful misconduct differs from serious misconduct, in that the former may be any kind of wrong or improper conduct,

while the latter must be the conduct which is not only wrong or improper, but also of a grave and aggravated character. Further, wilful misconduct must be "either intentional misconduct, that is, such as is done purposely with knowledge, or misconduct of such a character as to evince a reckless disregard of consequences" to him who is guilty of it. Some authorities hold that the wilful misconduct of this phrase includes within it serious misconduct, and hence serious in this phrase, "wilful and serious misconduct," does not add to the meaning of wilful misconduct. We think this construction does not do complete justice to the legislative purpose in the use of this language. Unquestionably the authors of our Compensation Act of 1913 had before them the Acts of other jurisdictions where this phrase is used, notably, in Massachusetts, Statutes of 1911, Chapter 751, Part II, § 3. And when the Commissioners recommended in 1915, the limitation of this phrase, to which we have already referred, no doubt the General Assembly had before it *Burns'-Case*, 218 Mass. 8, 10, 105 N. E. 601, in which the Supreme Judicial Court of Massachusetts had construed this phrase and substantially as we do.

When the Commissioner found that the plaintiff at the time of her injury "did intend to and did violate the rule which had been so recently explained to her, that she must have it in mind," his finding is equivalent to a finding that the plaintiff deliberately violated this reasonable safety-rule, knowing at the time that she was violating the rule, and hence her conduct was wilful within the meaning of this phrase. We think this finding excludes the idea that the act was thoughtless or heedless. And we assume that the Commissioner, in making this finding, had in mind the distinction between an intentional breach of a rule with knowledge, and a breach which was the result of thoughtlessness

or inadvertence or error of judgment, which we held in *Gonier* v. *Chase Companies, Inc.*, could not constitute "wilful misconduct." The intention to violate the rule must exist at the moment the person injured begins the act which results in injury.

Let us see whether the Commissioner has found facts which constitute "serious misconduct." The plaintiff was instructed in the use of this machine on the afternoon of February 21st, by a physical demonstration of the method of doing the work. So far as appears, serious liability to injury from doing the work by placing the material on and taking it off with the thumb and fingers instead of by the forceps, was not explained to her. Next morning she was found doing the work without using the forceps, and was told in her own language not to use her fingers as she was doing, but to use the forceps. She understood thoroughly what the foreman said to her, and when he left she was using the forceps in her work. No other or further instruction or supervision appears to have been given this Italian workingwoman by the defendant upon this, to her, new work and upon a new machine, and as to work in the doing of which there is very serious danger of injury, unless it be done in the manner directed by this foreman. The special liability to injury was not explained to her; the safety-rule regarding the doing of this work was not explained to her, the reasons for the existence of the rule was not explained to her, the liability of discharge for the violation of the rule was not explained to her, the method and manner in which the experienced workwoman sometimes did this work, by putting the thumb and first finger on the sides of the shell, and the reason that there was less danger doing the work this way than by taking hold of the shell directly with the index-finger on top, was not explained to her, nor was

it explained to her that when the employee gets accustomed to the use of the forceps she can do the piece work as rapidly as by the use of the fingers. In short, there was no attempt made to make this employee understand and appreciate the danger of this work, the reason for the use of the forceps, and the fact of the safety-rule and the reason for its·existence. There is no finding that the plaintiff appreciated that the doing of this work in the manner prohibited would expose her to serious injury. There was, so far as appears, no reasonable supervision of the employee to see that she did know and appreciate this danger, and did do the work in the manner directed. It was improper conduct for her to violate the instruction of the foreman; but it was not necessarily serious misconduct, "that is, conduct of a grave and aggravated character." That could not be found until it appeared that the plaintiff fully knew and appreciated that her misconduct would expose her to serious injury, and, so knowing and appreciating, did the act in violation of her instruction, from which her injury resulted. There is no finding of this character, and no facts found from which such an inference must necessarily be drawn.

Under this finding we cannot hold the conclusion of the Commissioner, that the plaintiff was not guilty of wilful and serious misconduct, to have been erroneous, but rather we must hold that it accords with the construction placed upon this phrase by our decisions. *Gonier* v. *Chase Companies, Inc.,* 97 Conn. 46, 55, 58, 115 Atl. 677; *Kinsman* v. *Hartford Courant Co.,* 94 Conn. 156, 160, 108 Atl. 562; *Merlino* v. *Connecticut Quarries Co.,* 93 Conn. 57, 60, 104 Atl. 396; *Hall* v. *LaCourciere Co.,* 93 ·Conn. 1, 3, 104 Atl. 348.

The Superior Court is advised to render judgment affirming the *pro forma* award of the Compensation Commissioner.

In this opinion Beach, Curtis and Keeler, Js., concurred.

Burpee, J. (dissenting). I disagree with the conclusion of the court that the conduct of the plaintiff, which it is admitted was "improper conduct," should not be held to have been "serious misconduct," because the Commissioner has not expressly found that the plaintiff fully knew and appreciated that her misconduct would expose her to serious injury. It is true that the Commissioner has not stated that fact in explicit language, but it seems to me that he has set forth facts from which such a deduction must logically and lawfully be drawn. He relates that on an afternoon the plaintiff was set to work on a machine in the operation of which a piece of brass is placed on a die under a press by means of a pair of forceps or tongs, and when the press is tripped by a foot-lever it drops on the brass and by its weight crushes it into a desired shape. He states that "the proper method of doing this work was clearly indicated to her by a physical demonstration," and to enable her to follow that method she was provided with a pair of forceps or tongs. She operated the machine that afternoon and the next morning, and then her foreman, seeing her working without her forceps, told her in her own language not to use her fingers to place the brass under the press. It is further found that she thoroughly understood these instructions, and immediately resumed the use of her forceps in her work. It would appear, therefore, that by means of the "physical demonstration" of the operation of the machine, and through the directions given to her, she had learned that the purpose of putting a piece of brass upon the die and dropping the press upon it was to crush the metal, and that during the practical working of the machine by herself

and by others she had watched its falling weight effect that purpose repeatedly, and well understood the results of the operation. She was, the Commissioner informs us, a woman "of fair intelligence." It is a familiar and often applied principle of law that a person shall be held to know all he would know if he made proper use of his senses. For that reason it seems to me a necessary deduction from these facts that she knew and appreciated the danger of putting her fingers over the piece of brass under the press which was ready to drop upon it, that she understood that the press, when it fell, would crush her flesh as it did the hard brass, and that that was the reason why she had been distinctly, and more than once, directed to use the forceps or tongs; and that therefore she knew and appreciated that, if she did her work in the manner prohibited, she would expose herself to serious injury. Hence the admitted "wilful" misconduct should, I think, be held to be also "serious" misconduct, within the meaning that has been given to these words in our decisions, and in this respect the judgment of the Commissioner to have been erroneous. Because these logical, lawful and apparently necessary deductions and conclusions have not been drawn and allowed to have the influence they merit, I am compelled to dissent from the opinion of the court.