NADZAR A. MARTINO *v.* THE ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 102860

Memorandum filed October 4, 1957.

*Samuel Gruber,* of Stamford, for the plaintiff.

*John J. Bracken,* attorney general, and *Harry Silverstone,* assistant attorney general, both of Hartford, for the defendant.

*Marsh Day & Calhoun,* of Bridgeport, for the Columbia Recording Corporation.

TROLAND, J. This is an appeal from an award of the unemployment commissioner for the fourth district reversing an award of the administrator and awarding the claimant benefits.

The appeal raises questions of fact and law as follows: (1) Was claimant guilty of "wilful misconduct"? (2) Was plaintiff "discharged" or "suspended"? (3) Is a person "suspended" as a disciplinary measure for misconduct subject to the same disqualification to receive benefits as a person "discharged" for wilful misconduct?

The claimant, forty-one years of age, had worked for Columbia Recording Corporation as a pressman for nearly sixteen years. On December 4, 1956, due to defective material, claimant was getting stains on the records he was pressing and such records were not acceptable units in the computation of his incentive pay. In several discussions with the foreman that day, in which the foreman reiterated that claimant would not be paid for those records, the claimant became exasperated and used profane language to

the foreman. As a result the claimant was charged with insubordination and, as the commissioner has found, "was separated from his employment."

The appellant seeks to have the finding corrected to state that the claimant was directed by his foreman "to change press"; that claimant "refused to obey orders to change press" and used profane language to the foreman; that claimant's words and conduct constituted a direct refusal to obey orders and were insubordination amounting to wilful misconduct; and that he was "discharged for wilful misconduct."

There is a dearth of testimony in the record. The claimant is the only person who was present and participated in the events leading up to his separation who testified. After some hearsay testimony concerning the situation, the commissioner stated, during the hearing, the question as it then appeared to him, as follows: "At any rate, we have a period where Mr. Martino—where the claimant—did not work because he was either discharged or suspended, but he did not work and for which he is filing claims. The question now is whether that period during which the company did not permit him to work, and during which he filed claims, was a period resulting from some act of wilful misconduct on Mr. Martino's part."

There is conflict in the testimony. The commissioner inquired of the claimant, "What happened?" The claimant replied: "I started in the morning. I was making bad records. There were rejections. I called over the instructor . . . . We changed the material about three or four times. I was still getting rejects, in other words, stains. He suggested I clean the table. In the process of cleaning the table he suggested we use some benzine. . . . We did that. We were getting worse

stains than we did before. . . . When he came back I was still making stains. He took one down to the foreman . . . . The foreman came back. He said, 'Lefty, you are making stains. You will have to change press. You are not going to get paid.' I said, 'I know that.' He said, 'You are not going to get paid, Lefty.' Naturally I wasn't in the best mood. I told him to 'go to hell.' "

The foreman did not testify. The instructor did not testify. The representative of the company, who testified, giving information he secured from the personnel manager, said: "He used this abusive language, and he was discharged on the spot."

On the conflicting testimony on this phase, the commissioner has found: "As a result, the claimant was charged with insubordination and was separated from his employment."

Whatever the status of claimant, it is undisputed that he at once started grievance procedures through his union representatives, and meetings were held on December 4, December 5, December 10 and December 21, 1956. As a result of the meeting of December 21, it was agreed Mr. Martino should report back to work on January 7, 1957, with two days' holiday pay. Whatever the company record showed originally (which is not clear from the testimony), it was nevertheless definitely stated by the company witness: "On the Company records, they carry his period December 4th to January 7th as a suspension."

On this phase of the matter, from the conflicting testimony, the commissioner has found: "This separation lasted until January 7, 1957, when he was reinstated by his employer as a result of the Union's intervention. That separation period now appears on the Company's records as a suspension period."

Misconduct is any improper or wrong conduct. To be wilful, such conduct must be deliberate, not merely a thoughtless act on the spur of the moment. *Gonier* v. *Chase Companies, Inc.,* 97 Conn. 46, 55, 57. Whether certain conduct amounts to misconduct depends upon the degree of culpability or the frequency of the occurrences. A severe disqualification is provided under our law for wilful misconduct.

The commissioner has refused to correct his finding to show as requested that the claimant was "discharged" and further that he "was discharged for wilful misconduct." The facts requested to be added are not admitted or undisputed facts. The commissioner has found that the claimant's acts were not wilful misconduct and that claimant was not in fact discharged.

The power of this court over the commissioner's administrative decisions is very limited. *Brinkley* v. *Administrator,* 139 Conn. 588, 590. Under all the circumstances proper to be considered, the commissioner's ruling that claimant's use of profane language was not such insubordination as to be termed wilful misconduct under our unemployment compensation law was not erroneous as a matter of law. What was wilful misconduct was a question of fact in this case. The commissioner's finding on the record cannot be corrected. *Gonier* v. *Chase Companies, Inc.,* 97 Conn. 46, 57.

The remaining question is whether the claimant, having been suspended as a disciplinary measure for misconduct, is subject to the same disqualification to receive benefits as imposed by the statute in the case of discharge for wilful misconduct.

In a number of states the law provides certain penalties where an employee has been discharged or suspended as a disciplinary measure for misconduct connected with his work, and more severe penalties

are imposed in the event the employee is guilty of deliberate and wilful misconduct. In Connecticut, the legislature has not established a disqualification excluding from benefits under the act an employee discharged or suspended for misconduct of a lesser degree of culpability than that included in the definition of "wilful misconduct." Cum. Sup. 1955, § 3073d.

The decision of the unemployment commissioner that claimant was eligible for benefits during the weeks in which he filed in December, 1956, is affirmed.