******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SHARON CLEMENTS *v.* ARAMARK
CORPORATION ET AL.
(AC 39488)

Keller, Prescott and Bright, Js.

*Syllabus*

The plaintiff appealed to this court from the decision of the Workers' Com-
pensation Review Board, which affirmed the decision of the Workers'
Compensation Commissioner dismissing the plaintiff's claim for certain
disability benefits and determining that the plaintiff's head injury was
noncompensable under the Workers Compensation Act (§ 31-275 et seq.)
because it did not arise out of her employment. While at work for the
defendant A Co. the plaintiff became lightheaded, passed out and fell
backward on asphalt, hitting her head on the ground. After being taken
to the hospital, the plaintiff suffered from cardiac arrest. The plaintiff
had a history of, inter alia, cardiac disease, and was diagnosed with
certain injuries related thereto and a concussive head injury. The com-
missioner determined that the plaintiff's head injury did not arise out
of her employment with A Co. but was caused by the heart related
episode. The board affirmed the commissioner's decision, concluding
that the plaintiff submitted no evidence to the commissioner that her
employment contributed to the fall that led to her head injury or that
the injury would not have occurred had she been somewhere else at
the time. The plaintiff claimed that the board improperly concluded that
her head injury did not arise out of her employment because her fall
was caused by her personal infirmity rather than a workplace condition.
*Held* that the board improperly affirmed the commissioner's decision
holding that the plaintiff's head injury was noncompensable; although
the plaintiff, due to a personal infirmity, fell backward and hit her head
on the ground on the premises of A Co. and the personal infirmity that
caused her to fall did not arise out of her employment, the resultant
injuries that were caused by her head hitting the ground at her workplace
did arise out of her employment and, thus, were compensable.

Argued January 24—officially released May 29, 2018

*Procedural History*

Appeal from the decision by the Workers' Compensa-
tion Commissioner for the Second District dismissing
the plaintiff's claim for certain disability benefits,
brought to the Workers' Compensation Review Board,
which affirmed the commissioner's decision, and the
plaintiff appealed to this court. *Reversed*; *judgment
directed.*

*Gary W. Huebner*, for the appellant (plaintiff).

*Dominick C. Statile*, with whom, on the brief, was
*Tushar G. Shah*, for the appellee (defendants).

*Opinion*

BRIGHT, J. The principal issue in this appeal is the compensability, under the Workers' Compensation Act (act), General Statutes § 31-275 et seq., of an injury to an employee that occurred on an employer's premises when the employee became lightheaded, fell, and hit her head while walking to her work station before the start of her shift. The plaintiff, Sharon Clements, appeals from the decision of the Workers' Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner for the Second District (commissioner) in favor of the defendant employer, Aramark Corporation (defendant), and the employer's insurer, Sedgwick CMS, Inc. The plaintiff claims that the board erred in holding that, because the plaintiff's fall was caused by her personal infirmity, rather than a workplace condition, her resultant head injury did not arise out of and in the course of her employment within the meaning of the act. We agree and, accordingly, reverse the decision of the board.

The following undisputed facts, which are set forth in the commissioner's decision or are ascertained from uncontested portions of the record, are relevant to our consideration of the issue on appeal. The plaintiff, while employed by the defendant, served as a mess attendant at the Coast Guard Academy in New London (academy). Her duties included serving food and beverages, and cleaning up after meals. She typically worked during both breakfast and lunch. On the morning of September 19, 2012, the plaintiff drove to work, parked her vehicle at the academy at approximately 5:40 a.m., and exited her vehicle. She walked a short distance from her vehicle to a building. The path was short, not uphill or inclined in any way. The plaintiff did not trip. The plaintiff testified that, after entering the building and walking down a hallway, she "went through the door to go out to get into the next building," where she became lightheaded and passed out, falling backward "on the [asphalt],"[1] and hitting her head on the ground. No one witnessed her fall. After she was discovered by coworkers, someone called for assistance. Members of the New London Fire Department arrived and found the plaintiff "lying on the ground" with "a bump on the back of her head," "unable to sign [a] consent form because of her level of consciousness . . . ." The plaintiff was taken to Lawrence + Memorial Hospital (hospital). Hospital reports indicate that the plaintiff suffered from a syncopal episode and that she was diagnosed with ecchymosis and swelling.[2] A treating physician, Neer Zeevi, and hospital records, indicate that the plaintiff's syncope likely was cardiac or cardiogenic in etiology.

While in the emergency room, the plaintiff suffered from cardiac arrest. During her stay in the hospital, the plaintiff had a pacemaker inserted. In a discharge summary report, John Nelson, a neurologist, opined:

"Apparently she had significant head trauma secondary to her fall. While in the emergency department, she again lost consciousness and was seen to have asystole[3] on monitoring. [Cardiopulmonary resuscitation (CPR)] was initiated and the patient had return of spontaneous rhythm and blood pressure shortly afterwards. Per the [emergency room] physician, CPR was reportedly begun within [twenty] seconds on onset of asystole and was only carried out for approximately [ten] seconds before the patient experienced spontaneous return of rhythm." (Footnote added.)

The plaintiff has a history of cardiac disease, hypertension, hyperlipidemia, hypothyroidism, and an irregular heartbeat. She also has a family history of coronary disease. Her discharge records set forth, inter alia, the following diagnosis: asystolic arrest, cardiogenic syncope with concussive head injury, and hypothyroidism. On the basis of these findings, the commissioner determined that "the [plaintiff's] injury did not arise out of her employment with the [defendant], but was caused by a cardiogenic syncope."

The plaintiff appealed from the commissioner's decision to the board. She claimed, in relevant part, that the commissioner had misapplied the law and improperly determined that her injury did not arise out of her employment. The board disagreed, concluding that "[t]here is no question that the [plaintiff] has been left with a significant disability as a result of the concussive injury which is the subject of this appeal. Nevertheless, the [plaintiff] provided the . . . commissioner with no evidence [that] would substantiate the claim that her employment contributed in any fashion to the fall [that] led to the injury or that the injury would not have occurred had the claimant been somewhere else at the time." Accordingly, the board affirmed the decision of the commissioner, ruling in favor of the defendant. This appeal followed.

We begin by setting forth the standard of review applicable to workers' compensation appeals. "The commissioner has the power and duty, as the trier of fact, to determine the facts . . . and [n]either the . . . board nor this court has the power to retry facts. . . . The conclusions drawn by [the commissioner] from the facts found [also] must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [I]t is well established that, in resolving issues of statutory construction under the act, we are mindful that the act indisputably is a remedial statute that should be construed generously to accomplish its pur-

pose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Citations omitted; internal quotation marks omitted.) *Hart* v. *Federal Express Corp.*, 321 Conn. 1, 18–19, 135 A.3d 38 (2016).

"Our scope of review of the actions of the board is similarly limited. . . . The role of this court is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Wiblyi* v. *McDonald's Corp.*, 168 Conn. App. 77, 86, 144 A.3d 1075 (2016).

The plaintiff states that "[t]his appeal asks the court to determine whether the correct standard of law was applied to the facts as found by the trial commissioner." She claims that the board erred in holding that, because the plaintiff's fall at work was caused by her personal infirmity, rather than a workplace condition, her resultant head injury did not arise out of and in the course of her employment. She argues that her head injury was caused by her head striking the ground at her place of employment, not by any personal infirmity. The personal infirmity that caused her fall, she argues, did not involve a head injury; rather, the head injury for which she is seeking benefits resulted from her head hitting the ground at her workplace. Accordingly, she argues, the board erred in concluding that her head injury did not arise out of and in the course of her employment.

It is beyond dispute that the plaintiff's head injury was caused by her head hitting the ground *after* her fall. The plaintiff concedes that the fall, itself, was the result of a personal infirmity. The defendant contends that the plaintiff's head would not have hit the ground if she had not fallen as a result of a personal infirmity. Consequently, it argues, the injuries did not arise out of, or occur in the course of, her employment and are not compensable under the act.

We begin our analysis with the relevant language of the act. Section 31-275 provides in relevant part: "(1) 'Arising out of and in the course of his employment' means an accidental injury happening to an employee . . . originating while the employee has been engaged in the line of the employee's duty in the business or affairs of the employer upon the employer's premises . . . ." From this language our Supreme Court has derived a two part test.

"It is well settled that, because the purpose of the act is to compensate employees for injuries without fault by imposing a form of strict liability on employers, to recover for an injury under the act a plaintiff must prove that the injury is causally connected to the employment. To establish a causal connection, a plaintiff must demonstrate that the claimed injury (1) arose out of the employment, and (2) in the course of the employment." (Internal quotation marks omitted.) *Spatafore* v. *Yale University*, 239 Conn. 408, 417–18, 684 A.2d 1155 (1996). "Proof that the injury arose out of the employment relates to the time, place and circumstances of the injury. . . . Proof that the injury occurred in the course of the employment means that the injury must occur (a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." (Citation omitted; internal quotation marks omitted.) Id., 418. [4] Although both factors of this two part test appear to merge into a single test of work-relatedness, "the phrase 'arising out of,' specifically, has been construed as referring to injury causation . . . whereas 'in the course of' relates to the time, place, and circumstances of the injury." *Birnie* v. *Electric Boat Corp.*, 288 Conn. 392, 407–408, 953 A.2d 28 (2008). Because the defendant concedes that the second factor of the test has been met; see footnote 4 of this opinion; we consider only whether the plaintiff's head injury arose out of her employment.

The plaintiff argues that her head injury arose out of her employment because it occurred on the premises of her employer when she hit her head on the ground before the start of her morning shift. The plaintiff primarily relies on *Savage* v. *St. Aeden's Church*, 122 Conn. 343, 189 A. 599 (1937), to support her claim. The defendant argues that the plaintiff's injury was caused by her fall, which did not arise out of her employment, but was the result of a personal infirmity. It further argues that *Savage* is inapposite because "the injury in question [in that case] was caused by a 'hazard' that existed as a condition of the employment, [namely,] working on a ladder." On the basis of our Supreme Court's decision in *Savage*, we agree with the plaintiff.[5]

In *Savage*, the plaintiff brought a workers' compensation claim on behalf of the decedent, an employee of the defendant church, who had been found in the basement recreation room at the rectory, "lying flat on his back, his overalls partly on, a painter's cap by his head, and on the pool-table near by his bag with the paint brushes he expected to use in his work at the rectory. He had apparently fallen backward on the concrete floor and fractured his skull. The commissioner found that the proximate cause of his death was the fracture of his skull upon the concrete floor, and that the cause of his

fall was unknown, though he also found that . . . he [had previously suffered] from a cystolic murmur at the apex of his heart. He further found that the fatal injury arose out of and in the course of the employment." *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 345.

Our Supreme Court explained that it did not appear to be questioned that the decedent's injury was suffered in the course of his employment: "So far as appears it occurred within the period of the employment, at a place where [the decedent] might reasonably be, and while he was reasonably fulfilling the duties of the employment or doing something incidental to it." Id. What was questioned, however, was whether the injury arose out of the decedent's employment with the church. Id. The plaintiff alleged that the proximate cause of the decedent's injury was "the fracture of his skull on the concrete floor which resulted from his fall." Id., 346. As in the present case, the defendants in *Savage*, however, argued that because the fall was due to causes unrelated to the employment, namely a heart attack or a fainting spell, "the resulting injury was not due to a hazard of the employment . . . ." Id. The court determined that this was a question of proximate causation. Id.

Looking to the case of *Gonier* v. *Chase Companies, Inc.*, 97 Conn. 46, 115 A. 677 (1921), our Supreme Court explained that "an injury received in the course of the employment does not cease to be one arising out of the employment merely because some infirmity due to disease has originally set in action the final and proximate cause of the injury. The employer of labor takes his workman as he finds him and compensation does not depend upon his freedom from liability to injury through a constitutional weakness or latent tendency. Whatever predisposing physical condition may exist, if the employment is the immediate occasion of the injury, it arises out of the employment because it develops within it." (Internal quotation marks omitted.) *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 346–47.

Our Supreme Court, in addressing the defendants' argument in *Savage*, an argument that is strikingly similar to the argument advanced in the present case, namely, that the fall did not arise out of the employment because it was due to some personal infirmity and not some defect in the floor or other dangerous condition of employment, explained: "An injury which occurs in the course of the employment ordinarily arises out of the employment, because the fact that the employee is in the course of his employment is the very thing which subjects him to the risks which are incident to the employment. . . . An act or omission for the exclusive benefit of the employee or of another than the master [however] is not ordinarily a risk incident to the employment. . . . [W]hen an employee voluntarily departs from his duties . . . his injuries result from his own

act and have their origin in a risk which he has created and which has no causal connection with his employment. . . . Also, of course, death from natural causes, although occurring in the course of the employment, has no causal connection with it, as would have been the case here if a heart attack had been the direct cause of [the decedent's] death rather than the fall to the concrete floor. But, aside from situations such as these, where the injury arises from a cause which has no connection with the employment, *an injury arising in the course of the employment ordinarily is the result of a risk incident to the employment*." (Citations omitted; emphasis added.) Id., 347–48.

The court further explained: "The hazard is peculiar to the employment because it is incidental to and grows out of the conditions of the employment and not because it should be foreseen or expected, or because it involves danger of serious bodily injury. We have never held that the conditions of the employment must be such as to expose the employee to extraordinary risks in order to entitle him to compensation in case of injury. The risk may be no different in degree or kind than those to which he may be exposed outside of his employment. The injury is compensable, not because of the extent or particular character of the hazard, but because it exists as one of the conditions of the employment." Id., 348–49.

In the present case, the defendant argues in its appellate brief that the board correctly determined that *Savage* is distinguishable from the present case because "the injury [in *Savage*] was caused by a 'hazard' that existed as a condition of the employment, in that case, working on a ladder." We disagree. Our Supreme Court in *Savage* did not determine that the decedent in that case had fallen off a ladder. Rather, the court determined that the decedent had been *standing on the ground*, not on the ladder, when he fell backward and hit his head. See *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 350.

The court explained that a "hazard" exists where an accident occurs incident to the employment; the accident, itself, is the hazard. See id., 348, 349 ("It is not necessary that the place where the employee is working be in itself a dangerous one. It is enough if it turns out that there was a hazard from the fact that the accident happened."). In comparing the facts surrounding the *Savage* employee's injury to the injury of the employee in *Gonier* v. *Chase Companies, Inc.*, supra, 97 Conn. 54, 58 (decedent's "employment brought him upon . . . scaffolding," and "as he stood up to continue his work he became faint and fell" and died), our Supreme Court explained in *Savage* that "[t]he decision [to award benefits in *Gonier*] would have been the same had the fall [in *Gonier*] been, *as in the present case, simply to the floor upon which the*

*employee was standing.*" (Emphasis added.) *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 350. Clearly then, the court in *Savage* stated that the employee had been standing upon the floor when he fell. See id.

Our Supreme Court reaffirmed its reasoning in *Savage* in the case of *Blakeslee* v. *Platt Bros. & Co.*, 279 Conn. 239, 902 A.2d 620 (2006). In *Blakeslee*, the plaintiff was injured when three coworkers attempted to restrain him while he was suffering a grand mal seizure. Id., 240–41. The commissioner determined, and the board agreed, that the injuries were not compensable because they arose out of the seizure, which did not arise out of the plaintiff's employment. Id., 241–42. Our Supreme Court, citing *Savage*, rejected the board's conclusion. Id., 245–46. In doing so, the court opined that "it is evident that the commissioner and the board began with a single proposition from which all other conclusions inexorably followed, namely, that, if the plaintiff's seizure was a noncompensable injury, any injuries causally connected thereto similarly must be noncompensable. This essential proposition, however, cannot be sustained." Id., 245. The court further relied on the language it first set forth in *Savage* and held that "[c]ompensibility also may not be denied simply because the plaintiff could have been exposed to a similar risk of injury from the administration of aid had he suffered the seizure outside of work. [A]n injury may arise out of an employment although the risk of injury from that employment is no different in degree or kind [from that] to which [the employee] may be exposed outside of his employment.[6] The injury is compensable, not because of the extent or particular character of the hazard, but because it exists as one of the conditions of the employment." (Footnote added; internal quotation marks omitted.) Id., 246.

We conclude that the board and the commissioner have made a similar error in the present case to the one they made in *Blakeslee*.[7] They concluded that, because the plaintiff's personal infirmity, which caused her to faint and fall, was a noncompensable injury, the injury resulting from her head striking the ground also must be noncompensable.[8] On the basis of our Supreme Court's decisions in both *Blakeslee* and *Savage*, we disagree with this conclusion.

In the present case, as in the *Savage* case, the plaintiff, due to a personal infirmity, fell backward and hit her head on the ground at her place of employment. Although the personal infirmity that caused her to fall did not arise out of her employment, the resultant injuries that were caused by her head hitting the ground at her workplace did arise out of her employment. Accordingly, the board improperly affirmed the commissioner's decision holding otherwise.

The decision of the Workers' Compensation Review Board is reversed and the case is remanded to the board

with direction to sustain the plaintiff's appeal.

In this opinion the other judges concurred.

[1] In its brief, the defendant concedes that "[t]he facts as stated by the [plaintiff] are undisputed with the exception of references made regarding the locus of the [plaintiff's] fall giving rise to the subject claim. The [plaintiff] has averred that her fall occurred on 'concrete' giving rise to the subject injury. No facts were found as to the actual nature of the surface upon which the [plaintiff] fell. As such, no finding of fact in the record supports reference to the surface as concrete." We note, however, that the board repeatedly stated in its decision that the ground was concrete.

During oral argument before this court, the plaintiff stated that it did not make a difference to her claim whether the ground was concrete or some other material.

[2] Stedman's Medical Dictionary (28th Ed. 2006) p. 1887, defines "syncope" as the "[l]oss of consciousness and postural tone caused by diminished cerebral blood flow." "Ecchymosis" is defined as "[a] purplish patch caused by extravasation of blood into the skin . . . ." Stedman's Medical Dictionary (28th Ed. 2006) p. 606.

[3] Stedman's Medical Dictionary (28th Ed. 2006) p. 172, defines "asystole" as the "[a]bsence of contractions of the heart."

[4] In its appellate brief, the defendant, after setting forth the two factor causal connection test, specifically concedes that "[h]ere, *the only disagreement is whether the injury arose out of the employment*." (Emphasis added.) Despite this very clear statement, however, when Judge Keller made a statement during appellate oral argument to the effect that the parties had agreed that the plaintiff's injury had occurred *in the course of her employment*, the defendant's counsel stated: "*I don't agree to that. I never said that*." (Emphasis added.) We reject counsel's baseless assertion in light of the defendant's clear statement in its appellate brief. In addition, we thoroughly have reviewed the certified record in this case and have found that the defendant specifically told the commissioner in its trial brief that "[t]his incident occurred when [the plaintiff] arrived at her place of employment, walked from her car to the front door, and then fell to the ground. As such, *the* [*defendant*] *concede*[*s*] *that the injury occurred while in the course of her employment*. Any argument raised by the [plaintiff] in regard to the timing, location, incident to employment, or the mutual benefit doctrine must be disregarded by the [c]ommissioner, as . . . those facts only empower a finding that the accident occurred 'in the course of employment' and are immaterial in determining the dispositive issue at bar: whether the injury arose out of the employment." (Emphasis added.) In light of these clear concessions, we conclude that the defendant, in fact, has conceded the second factor despite its protestation during appellate argument. Accordingly, we do not address it.

[5] Although the workers' compensation statutes at the time of the *Savage* decision differ from the present statutes, neither the parties nor the board made any argument that the difference in the statutes affects the applicability or value of the *Savage* case. We conclude that the precedential value of *Savage* on this particular issue remains intact because *Savage* remains good law, having been cited or quoted recently by our Supreme Court. See *Sullins* v. *United Parcel Service, Inc.*, 315 Conn. 543, 552, 108 A.3d 1110 (2015); *Blakeslee* v. *Platt Bros. & Co.*, 279 Conn. 239, 246, 902 A.2d 620 (2006).

[6] We recognize that our Supreme Court and this court, at times, have made statements that appear to be inconsistent with this statement. For example, in *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 274 Conn. 219, 238, 875 A.2d 485 (2005), our Supreme Court quoted *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 310, 97 A. 320 (1916), for the proposition that "conditions that arise out of employment are 'peculiar to [it], and not such exposures as the ordinary person is subjected to.' " Neither in *Savage*, which came after *Larke*, nor in *Blakeslee*, which came after *Labadie*, did the court apply this proposition. To the contrary, the court held in both cases that the injury was compensable even though the risk the employee faced was no greater than what he would have been exposed to outside of work.

[7] We also note that the board relied upon the *dissent*, rather than the majority, in *Blakeslee* v. *Platt Bros. & Co.*, supra, 279 Conn. 259–60 (*Sullivan, J.*, dissenting), to support its conclusion. Taking guidance from Justice Sullivan's discussion of Professor Arthur Larson's framework designating risks as personal or neutral to assess compensability, it appears that the board overlooked the statement in the majority opinion that our Supreme

Court "has not heretofore adopted this framework" and the fact that it "decline[d] to so in" that case. *Blakeslee* v. *Platt Bros. & Co.*, supra, 251 n.9.

[8] The defendant points out that the board has reached the same conclusion in other cases involving injuries resulting from an employee's medical condition unrelated to his employment. In those cases the board also distinguished *Savage* on the misunderstanding that the plaintiff in *Savage* fell from a ladder. We certainly are not bound by those decisions.

---