## SOUTHERN CAN COMPANY *v.* MARY SACHS.

*Workmen's Compensation—Course of Employment.*

In the case of a claim on account of the death of one found unconscious at the foot of a stairway leading down from the second floor of the factory in which he was employed, *held* that the question whether the accident arose out of and in the course of employment was for the jury, although deceased, when last seen, was resting in a room on the second floor to which employees were not ordinarily permitted to go, since he might have ascended the stairway for a proper purpose, and could return to his work only by using it.                          pp. 564-568

The intoxication of an employee is no defense to the claim unless the injury or death resulted solely from the intoxication..
                                                              p. 566.

*Decided January 13th, 1926.*

Appeal from the Baltimore City Court (DUKE BOND, J.)..

Claim under the Workmen's Compensation Act by Mary Sachs, on account of the death of her husband, John W. Sachs, against the Southern Can Company, employer and insurer. From a judgment reversing an order of the State Industrial Accident Commission disallowing the claim, the employer and insurer appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*George Weems Williams* and *L. Vernon Miller,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellant.

*William D. Macmillan* and *William D. Roycroft,* with whom was *Harold Tschudi* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

About 5:20 o'clock P. M. on the 26th day of December, 1924, John W. Sachs, sub-foreman or gang-foreman of the Southern Can Company, was found unconscious at the foot of the stairway leading from the ground to the second floor of what is known as its No. 8 building, on Wolfe Street, Baltimore, Maryland. He was carried into the box factory, which is on the first floor of that building and from there he was taken to the St. Joseph Hospital, where it was found he had sustained a fracture of the skull. An operation was performed, but he died on December 30th, without regaining consciousness; death being due to hemorrhage of the brain.

A claim was filed with the State Industrial Accident Commission by Mrs. Mary Sachs, his widow. The employer, the Southern Can Company, being a self-insurer, asked for a hearing to determine among other things "whether or not the injuries sustained by the deceased were received in an accident arising out of and in the course of his employment." A hearing was granted, testimony was heard, and the commission passed its order disallowing the claim of the widow on the ground that the injuries were not received in an accident arising out of and in the course of the employment of the deceased. From this order an appeal was taken by the widow to the Baltimore City Court, where the case was heard by a jury, which rendered a verdict in favor of the claimant, reversing the order of the State Industrial Accident Commission. From that order the Southern Can Company has appealed to this Court.

In the course of the trial three exceptions were taken; two to the court's rulings on the evidence and one to its rulings on the prayers. The plaintiff offered one prayer, which was granted. The defendant offered in all nine prayers; the first four were designated as its A, B, C and D prayers, while the others were numbered from one to five, inclusive. Of the prayers offered by it, its A, B, C, D and third prayers were rejected. Its first, fourth and fifth were

granted, while its second was granted as modified. The third exception was to the granting of the plaintiff's first prayer and to the rejection of the defendant's A, B, C, D and third prayers and to the modification of its second prayer.

The chief reliance of the appellant, in its effort to have the judgment appealed from reversed, is upon the alleged erroneous rulings of the court in its refusal to grant the defendant's A, B, C and D prayers, of which each asked for a directed verdict in favor of the defendant for the following reasons: (a) because there was no evidence in the case legally sufficient to entitle the claimant to recover; (b) because there was no evidence legally sufficient to show that the death of the deceased was due to an accidental personal injury arising out of and in the course of his employment; (c) because the uncontradicted evidence shows that the personal injury received by John W. Sachs did not arise out of and in the course of his employment, and (d) because the uncontradicted evidence shows that John W. Sachs left the first floor of the premises of the Southern Can Company and went to the second floor of said premises for the purpose of resting or loafing and was injured while returning from said second floor.

The record discloses that there were two toilets provided by the company for the use of its employees, one upon the first floor and the other upon the second floor. To reach the toilet on the second floor it was necessary to ascend an enclosed stairway built on the outside of the building. At the head of the stairway were two doors, one on the right and one on the left. One of these entered the toilet and the other a room on the second floor of the building, used for the storage of shooks, etc.

Fred Baier, an employee of the company, when produced as a witness by it, testified that he went to the toilet on the second floor, and through the open door saw decedent sitting on some shooks, with his head in his hands. The witness went over and said to him, "Come on * * * get up * * * it is time to go home," and Sachs replied, "All.

right, Fred." Baier then went down stairs to his work, and when asked where he went said, "Well, I went in the door and then come out and went over in the other building, and as I went through, I get about fifteen feet from the door when I hear a noise, and I go out and there is Mr. Sachs laying at the foot of the steps." And when asked if he had fallen down the stairs, the witness said "Yes," and further testified that Sachs was at the time bleeding. "How long after you saw him and spoke to him was it when you heard the thump" caused by his fall? "It might have been about seven minutes."

One Patrick Casey, an employee of the defendant, when produced by it, testified that on the afternoon of the accident he bought for Sachs two one-half pints of what is called "Jump Steady." The first of these he bought between twelve and half-past twelve, and the other between four and half-past four; that he and Sachs drank the liquor that he had bought. The last half pint they drank between four and half-past four o'clock. That was the last time he saw him. He could not say that Sachs was drunk. He himself was not drunk.

It was in evidence that the store-room in which Baier saw Sachs sitting on the shooks was ordinarily locked during the day to prevent the employees from smoking therein, but was opened after work hours that the watchman might go into it in making his rounds, and that it was again locked before work hours in the morning. One of the witnesses called by the defendant testified that he saw Sachs about a quarter after two of that day and at that time he was drunk, staggering. He saw him later alongside of a hat box "matching the bottom up." He could not at that time tell whether he had been drinking. That was about four o'clock. Sachs was seen by Henry Mishlein, one of the employees of the company, going upstairs about twenty-five minutes after four on the afternoon of the day of the accident. The accident occurred upon the premises of the employer during the work hours of the day and while the employees were still at work.

The issue submitted to the jury in this case was "Did the

death of John W. Sachs result from an accidental injury arising out of and in the course of his employment"; and the inquiry to be made, under the prayers we are now considering, is whether the evidence offered in this case should have been submitted to the jury for the determination of that question.

It was said by Judge Burke, speaking for this court, in *Harrison v. Central Construction Co.*, 135 Md. 180, "The question as to whether an injury arose out of or in the course of the employment is ordinarily, like negligence or want of probable cause, a mixed question of law and fact; but when the facts have been ascertained and agreed upon by the parties, or are undisputed and there is no dispute as to the inferences to be drawn from the facts, the question becomes one of law and may be decided by the court."

This case was not submitted to the court upon an agreed statement of facts, but was heard by the jury upon the testimony of witnesses produced before it. The evidence was undisputed, except upon the question of the intoxication of the decedent at the time of the accident, upon which ground no defense was made, nor could any have been successfully made, as it was not shown from the evidence that the injury or death of the employee resulted *solely* from such alleged intoxication. *American Ice Co. v. Fitzhugh*, 128 Md. 391. But while the evidence was uncontradicted, with the exception mentioned, it is contended by the claimant that from such evidence a logical inference might well be drawn that the injury resulting in the death of her husband arose out of and in the course of his employment.

It is natural to assume, from the fact that the decedent was a sub-foreman in defendant's factory, that he had duties to perform more or less of a supervisory character and that it was his duty not only to see that those under his supervision did their work in the manner required of them, but to see that they were kept employed at their work. To do this he had to move among such employees, and it may have been that he, at times, was required to go to other parts of the building or to other places upon the premises in connection

with the duty devolving upon him in the supervision of the
work.   The evidence is that the room where he was seen
sitting on the shooks was one in which the employees ordi-
narily were not permitted to go, that it was open only after
work hours and was locked during the day, but, whatever
may have been the rule in respect thereto, the room on the
day of the accident was either found open by the decedent
or he opened it.   The room, of course, was open at the times
when shooks were placed therein or were taken therefrom
and no doubt there were other times when it was necessary
for an employee to go to the room upon some errand in con-
nection with the storage or removal of the goods.   Conse-
quently it is difficult to say just why or for what purpose
the decedent went into this room on the day of the accident.
The purpose or object of his going, so far as the record dis-
closes, was known only to him.

But in addition to all this, one of the toilets provided by
the defendant for the use of the employees was upon the
second floor and while it may have been that Sachs, because
of some physical impairment, usually went to the toilet upon
the first floor, we are not to assume from that fact that he
would not have gone to the other toilet if he found the lower
one occupied at the time he wished to use it.   It may have
been, on the occasion of the accident, that he went to the
lower toilet and, finding it closed or occupied, went to the
one upon the second floor.   It was not known how long he
was in the storage room.   He may first have used the toilet,
and, seeing the door of the storage room open, as it was seen
by Baier, may then have gone in that room for some purpose
connected with his work, and thereafter took his seat upon
the shooks, where he was afterwards seen by Baier.   It is
not contended by the defendant, if we understand it cor-
rectly, that the injury would not have arisen out of and in
the course of his employment, had it occurred in descending
the stairway after a visit to the toilet, but its contention
is that, because he went into the storage room, a place it is
claimed he had no right to be, and was there resting, he
abandoned his employment within the meaning of the act,

and as a result of which the injury he thereafter sustained in descending the stairway did not arise out of and in the course of his employment. But we cannot agree with the defendant in its contention, for if the decedent ascended the stairway with the object and purpose of going to, and using, the toilet, but for some reason did not use it and thereafter went into the storage room, even though to rest, such abandonment of his employment, if it could be so considered, lasted only so long as he was in the storage room and until he reached the stairway, which was the only way he could have returned from the toilet to his work below.

As we said, speaking through Judge Urner, in the recent case of *Todd v. Easton Furniture Company,* 147 Md. 352: On this appeal we have no occasion to render a decision as to whether the injury received by the employee arose out of and in the course of his employment, but our duty is simply to decide whether the jury should have been given the opportunity to determine that question upon the evidence presented."

The evidence, we think, admitted of an inference of fact opposed to the contention of the defendant, that the injury did not arise out of and in the course of the decedent's employment, and, such being the case, the court was right in not withdrawing the case from the consideration of the jury.

No objection was made, it seems, to the plaintiff's prayer, and we find nothing in the court's modification of the defendant's second prayer of which the defendant can properly complain. Nor was the defendant injured in any way by the court's refusal to grant its third prayer that was fully covered by its first prayer, which was granted; and we discover no reversible error in the court's rulings in the two exceptions upon the evidence, which were not pressed by the defendant.

As we find no errors in the court's rulings, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*