## RED STAR MOTOR COACHES, INC., et al., v. MARY KATHERINE CHATHAM.

[No. 50, October Term, 1932.]

*Decided January 12th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Frederick W. C. Webb,* with whom were *Carroll E. Bounds, William W. Travers,* and *Woodcock & Webb,* on the brief, for the appellants.

*L. Claude Bailey,* with whom were *L. Atwood Bennett,* and *Miles, Bailey & Williams,* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Paul Lester Chatham, the husband of the appellee, claimant under the Workmen's Compensation Act (Code, art. 101, sec. 1 *et seq.*, as amended), was found dead in the garage of the appellant, his employer, a short time after the schedule time for the departure of the bus of which he was the driver. The motor of the bus was running, and all the doors and windows of the garage were closed. The testimony of the physicians was that the cause of his death was carbon monoxide gas poisoning.

The case was heard by the commission on two issues: (1) Did the accident arise in and out of the course of the deceased's employment? (2) Was it the result of wilful misconduct? The commission decided in favor of the claimant on the first issue, and against her on the second. On appeal to the Circuit Court for Wicomico County, the only issue submitted to the jury was that of wilful misconduct. It was submitted on the record from the commission.

The court granted a prayer of claimant that, if the jury find that the death of Chatham resulted from an accidental injury arising out of and in the course of his employment, and was not due to any wilful misconduct on his part, their verdict under the issue submitted should be for the claimant and their answer to the issue must be "No." And the court refused the first and second prayers of the defendant for a directed verdict. The first prayer asked for an instruction that there was no legally sufficient evidence to entitle the plaintiff to recover, and the second, that the uncontradicted evidence in the case showed that the death of Chatham was due to wilful misconduct on his part.

It granted for the defendant the two following prayers: "The court instructs the jury that the State Industrial Accident Commission by its order dated September 22, 1931, determined that the death of Paul L. Chatham was the result of wilful misconduct on his part and for that reason the said State Industrial Accident Commission disallowed the claim of the plaintiff in this case, Mary C. Chatham, and that the said decision of the said Commission is *prima facie*

correct, and the burden is upon the plaintiff, Mary C. Chatham, to show by a preponderance of evidence that the death of Paul L. Chatham was not due to wilful misconduct on his part, and if the minds of the jury are in a state of even balance as to whether or not the death of the said Paul L. Chatham was or was not due to wilful misconduct on his part, then the verdict of the jury must be 'Yes.' "

"The court instructs the jury that if they shall find from the evidence that a rule and regulations of Red Star Lines, Incorporated, the employer of the deceased, Paul L. Chatham, prohibited operators of the employer's motor vehicles from starting the motors in such vehicles in garages when the doors thereof were closed, and if they shall further find from the evidence that the deceased had knowledge of said rule and regulations, and if they shall further find from the evidence that the death of the said deceased was caused by the starting of a motor vehicle of his employer while the same was stored in a garage at Crisfield, Maryland, with the doors thereof closed, and if they shall further find from the evidence that such action on the part of the deceased was in violation of the aforesaid rule and regulations of his said employer, then the jury may find that the death of the said deceased resulted from wilful misconduct on his part, and if they so find, their verdict must be 'Yes.' "

The jury found for the claimant on that issue, on which finding judgment was entered, hence this appeal.

The exceptions were to the granting of claimant's prayer and the refusal of defendant's first and second prayers. The only objection urged is the refusal of the court to withdraw the case from the jury.

We find no error in the refusal of the court to rule as a matter of law that the deceased was guilty of wilful misconduct or in granting claimant's prayer. Of course, we are not required to pass on the granted prayers of defendant.

In addition to the testimony as to the cause of death, the defendant offered testimony tending to show that the rules of the company forbade sleeping in the garage and the starting of the motor when the doors and windows were closed,

although it appears that these rules had not at that time been posted, and it is not certain that the deceased was ever personally advised of them. It is true the superintendent testified as follows: "Q. Can you state whether you personally ever communicated these rules to Mr. Chatham? A. Yes, I did. Q. How many times would you say? A. Mr. Chatham was in our employ about seven months and during that time I don't think the rule was ever posted. I told him it is a violation of the rules of the company for any man to sleep in a bus over night or to have the motor running in a closed garage due to the danger of being overcome, and pointed out the danger of it; as I was telling him it was a violation of the rules of the company." It does not appear how long this was before the accident.

But it also appears that later the superintendent testified as follows: "Q. What was the occasion for issuing instructions to Mr. Chatham? A. I remember those distinctly, the two rules that came up, sleeping in the bus and also added to that what might happen if they slept in the bus, sometimes they might run the engine, the busses are heated by exhaust from the engine, and they might want to keep themselves warm. I have been with the company since they started and thinking there might be such a thing I warned them to keep the motor shut off. Q. What means did you take to notify your men of these rules? A. Only in daily touch with them and at that time I would issue orders and rules to them personally. Q. In other words, as you would individually see the several men in your employ you would tell them? A. That's right. Since then we have posted them. Q. The rules had not been posted? A. No. Q. Did you ever have a meeting in which you told all your employees, warning them of the two rules you refer to? A. Just to pick out these two particular rules I could not swear to that, but these two rules were mentioned in particular, I am almost positive but I cannot swear that these two rules were brought up." The witness further testified that at that time they had in their employ possibly two dozen men.

Taking his testimony as a whole the jury could well have found that, when he said he communicated these rules personally to the decedent, he might have been thinking of him as one of a group and taken for granted that he was present when witness talked with the group; or that witness, remembering that he had spoken to the men as he "would individually see the several men," might have thought he had spoken to the decedent personally, and yet that it was quite possible he had missed this particular man. Besides, the jury had the right to disbelieve defendant's witnesses.

Another witness offered by the defendant, who was employed by the company as a car washer, testified that Chatham told him he sometimes stayed in the garage at night; that on one occasion he showed witness how he could warm the bus by starting the motor. "You ought to be careful, I says, this carbon monoxide will kill you before you know it, and he says, I don't think so. I don't think he knew what I was talking about. Several times I mentioned it to him."

It does not appear from the superintendent's testimony, even if believed, how strongly he impressed the deceased with the danger, and for all that appears he may not have remembered the warning, as it does not appear how long it was given before the accident. And it affirmatively appears from the testimony of the other witness that the deceased did not appear to know what the witness was talking about; that he did not agree with the witness as to the danger. Moreover, there is nothing in the testimony to show at what time the decedent arrived at the garage. It may be that it was after the starting time, and that in his hurry to get the motor going he forgot the danger.

We said in *Harris v. Dobson & Co.*, 150 Md. 71, 76, 132 A. 374, 375: "The meaning of the term 'wilful misconduct' in the statute has been considered by this court in earlier cases. *Baltimore Car Foundry Co. v. Ruzicka*, 132 Md. 491, 104 A. 167, 4 A. L. R. 113; *Beasman v. Butler*, 133 Md. 382, 105 A. 409. As was stated in the opinions in those cases, not all violations of rules or orders amount to wilful misconduct which, under the statute, disentitles an in-

jured workman to compensation. Few operations, perhaps none, can be carried out in strict accordance with rules and orders. Some departures in practice are inevitable. And we must assume that the Legislature had this in mind, and did not intend to deny compensation for injuries resulting from such ordinary departures. The very words 'wilful misconduct,' in their general acceptation, mean something else. The distinction has been variously expressed, but, while the expressions are helpful, we are not prepared to accept any of them as giving final definitions. We must, of course, avoid restricting the words of the statute by explanations adopted in particular cases. That wilful misconduct may consist in disregard of rules or orders has been decided in many cases. *Baltimore Car Foundry Co. v. Ruzicka, supra;* authorities collected in 23 A. L. R. 1168, and 26 A. L. R. 166. But there must be something more than thoughtlessness, heedlessness, or inadvertence in it. There must be, at least, a wilful breach of the rule or order. *Baltimore Car Foundry Co. v. Ruzicka, supra; Gonier v. Chase Companies,* 97 Conn. 46, 57, 115 A. 677, 19 A. L. R. 83; *Mancini v. Scovill Mfg. Co.,* 98 Conn. 591, 119 A. 897."

It cannot be said that it was established, as a matter of law, that the decedent was advised of the alleged rules and appreciated the danger; or that, if he did, any disregard of them by him was deliberate and wilful.

*Judgment affirmed with costs.*