460

WILLIAM J. KARNS *v.* LIQUID CARBONIC
CORPORATION ET AL.

[No. 871, September Term, 1973.]

*Decided August 14, 1974.*

The cause was argued before THOMPSON, GILBERT and MOORE, JJ.

*Lester H. Crowther*, with whom was *Claude F. McKenzie* on the brief, for appellant.

*Glenn C. Parker*, with whom were *Theodore B. Cornblatt* and *Smith, Somerville & Case* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

Workmen's compensation benefits are denied in Maryland where the injury resulted *solely* from the intoxication of the injured or *solely* from the effect of drugs.[1] Self-inflicted injury or wilful misconduct are the other statutory grounds for disentitlement to benefits but the statute omits the word "solely" in both instances. Md. Code, Art. 101, § 45.

In this case, the Commission found that appellant's injuries, sustained while driving his employer's truck on June 30, 1972, were the result of wilful misconduct "due to alcoholic intoxication" and that he was not entitled to benefits. On appeal to the Circuit Court, the jury upon the submission of issues returned a verdict that appellant's injury did not result *solely* from his intoxication but did result from his wilful misconduct, thus, in effect, affirming the action of the Commission in the denial of the claim. The court subsequently denied a motion for judgment *n.o.v.*

1. Four other states make similar provision, Kansas, Arkansas, New York and Rhode Island.

which was based upon alleged error in asking the jury to decide whether appellant's injuries resulted from wilful misconduct and in refusing to instruct that there was no legally sufficient evidence to show that appellant's injuries were due to his wilful misconduct.

On this appeal, error is claimed in the denial of appellant's motion for judgment *n.o.v.* and in overruling appellant's exception to an instruction that wilful misconduct must be found if appellant's drinking and driving was a wilful breach of a rule or order of his employer or of Maryland law and if such breach was the proximate cause of the accident.

Appellant does not dispute here the finding, implicit in the jury's verdict, of his intoxication.

The gist of appellant's argument is that the jury's finding that his injury did not result *solely* from his intoxication is incompatible with and precludes a finding of "wilful misconduct" based upon driving while intoxicated. To hold otherwise, appellant insists, would

> ". . . entirely negate the provision of the Workmen's Compensation Law that in order to be a defense to a compensation claim intoxication must be the sole cause of the accident. Also under [the court's] instruction no claimant would ever be able to win a Workman's Compensation case where his ability to drive was impaired, even though there were other causes contributing to the happening of the accident, *because anyone who drives while his ability is impaired automatically violates the statute.* This is against the long line of appellate decisions holding, as set forth in the statute, that intoxication is not a defense unless it is the sole cause of the accident." (Emphasis added.)

We think appellant's contentions misconstrue Art. 101, § 45 and that the claims of error in the proceedings below are unfounded.

I

Mr. Karns, age 33 at the time of the accident on June 30,

1972, 200 pounds, an experienced truck driver, married, and the father of two children, had been with the appellee-employer for more than ten years at the time of the hearing before the Commission in August, 1972. He was also the shop steward of the Teamsters' Union. The employer ran a dry ice, $CO_2$ cylinder gas business; 75% to 80% of the customers were independent restaurants and bars and approximately 25% of the business was with the Gino's chain. Appellant received a salary plus commission. On the day of the accident, he was driving a 1965 International Truck, van-type, with a load of gas cylinders which weighed approximately 7,000 pounds. This was not his regular vehicle but he had inspected it and found no mechanical defects.

After lunch, he made a delivery to Glacken's Bar on Pulaski Highway. He was there from 2:25 until about 3:30 and during that time delivered 2 cylinders and had some drinks. The barmaid testified that he had as many as six bourbons and beers ("boilermakers"); that he told her in conversation that he "had been drinking all day" and that he purchased a "six-pack" of beer before he left. Mr. Karns admitted the purchase but denied that he was a "drinking man" and testified that he had a total of "three shots" and "three small drafts."

When he left Glacken's he was supposed to stop next at a Gino's but traffic on the lot prevented him. He proceeded to Old Philadelphia Road (Route 7) intending to "come back in town and do my next stop there." The accident occurred after he crossed Big Gunpowder River Bridge, about five miles from his last stop. Appellant testified on cross-examination that it took him 25 minutes to travel this distance. Before the bridge, he stated, there is a long, steep hill. As he proceeded down the hill, the truck started to swerve. He thought something was wrong with the rear wheels because when he applied the brakes, the truck "leaned" as if capsizing. He released the brakes, resigned to riding it out, intending to apply the brakes when he reached the bottom. He had difficulty controlling the vehicle and was using both sides of the road as much as possible; there was no other traffic on the road, he said. The heavy gas

cylinders had broken loose from their chains and the weight was shifting back and forth. After crossing the bridge at the bottom of the hill, he pumped the brakes. The right rear wheel locked and the truck overturned, spilling its contents on the roadway.

After the accident, it was ascertained that the retread of one of the right rear dual wheels had peeled off. Mr. Karns testified on cross-examination that this "caused the truck to jump up and down . . . the cylinders to break loose and the truck to swerve." The evidence was undisputed, however, that all four rear (dual) tires were still inflated after the accident.

A sample of appellant's blood was taken, with his consent, at the hospital to which he was removed. The test revealed that at 5:45 p.m. when the sample was taken, the blood alcohol concentration was 0.16%. There was also expert testimony that, at the time of the accident (one hour and 45 minutes before the test) his alcohol concentration was actually between 0.18% and 0.24%. Under Art. 35, § 100, a blood alcohol concentration of 0.10% raises a presumption that the person's driving ability was impaired; at 0.15%, intoxication is presumed.

There was evidence before the jury that the union contract covering employees of Liquid Carbonic Corporation provided that drunkenness, drinking during working hours or being under the influence of liquor or drugs during working hours, including lunch time, constituted grounds for immediate dismissal. The Motor Carrier Safety Regulations of the U. S. Department of Transportation, received in evidence, prohibit (§ 392.S) consuming an intoxicating liquor within 4 hours before having physical control of a motor vehicle and being under the influence of an intoxicating liquor while operating a vehicle; even possession of an intoxicating liquor, regardless of its alcoholic content, while operating a vehicle is prohibited.

The Maryland statute pertaining to the offense of so-called drunken driving is Code, Art. 66½, § 11-902. Subsection (a) makes it unlawful to drive or attempt to drive or to be in actual physical control of a vehicle while *"in an*

*intoxicated condition;"* and subsection (b) makes the same unlawful when the person's "driving ability is *impaired by the consumption of alcohol."* (Emphasis added.)

The penalties for each offense are prescribed in subtitle 17, § 17-101. For a *first* offense, the violator of § 11-902 (a) "shall be punished by imprisonment for not more than one (1) year or by fine of not more than one thousand dollars . . ." or both. On a second or subsequent offense, the penalty is imprisonment for not more than two (2) years and, in the discretion of the court, a fine of not more than $1,000. A first offender convicted of driving while impaired "shall be punished by a fine of not more than five hundred dollars. . . ." A second or subsequent violator "may be punished by imprisonment for not more than one (1) year and, in the discretion of the court, a fine of not more than five hundred dollars. . . ."

In addition, the driver's license is revoked upon conviction of operating a motor vehicle in an intoxicated condition or upon conviction of a third or subsequent violation, committed within a period of three years, of operating a motor vehicle while driving ability is impaired. Art. 66¹/₂, § 6-205.2.

At the trial, a question was raised by appellant concerning the applicability to him of the union contract and of the federal safety regulations. This point is not urged on appeal and in any event, in our disposition of the case, attention is confined to the foregoing provisions of the motor vehicle statute.

II

The cases are legion in which American and English Courts have applied the term "wilful misconduct" in workmen's compensation cases. In Maryland one of the leading cases is *Baltimore Car Foundry Co. v. Ruzicka,* 132 Md. 491, 104 A. 167 (1918). There, the claimant was crushed and killed while attempting to pass between two railroad cars on a track in the car construction shop where he was employed. The Court distinguished imprudent conduct from wilful misconduct:

"... we agree with the Court below ... that the highly imprudent act which caused the unfortunate man's death is not properly to be characterized as wilful misconduct. It lacked the element of intentional impropriety which those words imply. It was a thoughtless and heedless act, but not a wilful breach of a positive rule of conduct or duty. ... 'The conduct must be willful, which means that it must be intentional, that is, deliberate, with an exercise of the will as opposed to accident, negligence, inadvertence, and thoughtless acts on the spur of the moment, or an error of judgment.' "

And in *Red Star Motor Coaches, Inc. v. Chatham*, 163 Md. 412, 163 A. 886 (1933) the employer defended on the ground that the deceased employee had violated company safety rules by running the motor of his bus in the employer's garage with the doors and windows closed. Holding that the evidence did not require a finding of wilful misconduct as a matter of law, the Court of Appeals said:

"That wilful misconduct may consist in disregard of rules or orders has been decided in many cases. [citations omitted] But there must be something more than thoughtlessness, heedlessness or inadvertence in it. There must be, at least, a wilful breach of the rule or order."

Larsen, *Workmen's Compensation Law*, § 32.30 agrees that

"... the general rule can be stated with confidence that the deliberate defiance of a reasonable rule laid down to prevent serious bodily harm to the employee will usually be held to constitute wilful misconduct, in the absence of a showing of ... specific excuses. ..."

Elsewhere it has repeatedly been recognized in the context of claims for compensation that there is a "quasi-criminal" element in the term "wilful misconduct:"

"Wilful misconduct involves conduct of a quasi

criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences." *Gregory v. McKesson & Robbins, Inc.*, 54 So.2d 682 (Fla. 1951). *See Smith v. American Mutual Liability Insurance Co.*, 187 S.E.2d 299 (Ga. 1972); *Gough v. Famariss Oil and Refining Co.*, 496 P.2d 1106 (N.M. 1972); *Banks v. Dept. of Education*, 462 S.W.2d 428 (Ky. 1971); *Weidt v. Brannan Motor Co.* 260 P.2d 757 (Wyo. 1953); *In Re Mercier's Case*, 214 N.E.2d 279 (Mass. 1966); *Caraher v. Sears, R. & Co.*, 200 A. 324 (Conn. 1938).

No meaningful distinction exists, as to such misconduct, between a safety rule of an employer and a state statute obviously designed for the safety of the employee as indeed of the public. In *Gregory, supra,* the court responded to the contrary contention by stating (p. 685):

"It would border upon absurdity to hold that although an employee must use some degree of care for his own safety while discharging the usual and customary duties devolving upon him in that he may not wilfully fail to use a safety device or observe a safety rule, yet be relieved of exercising any care whatsoever for his own safety when he may be designated by his employer to perform some exceptional or extraordinary service requiring him to travel upon the public highways."

Although there is no square holding in Maryland, courts of other jurisdictions have held that driving while intoxicated constitutes wilful misconduct under workmen's compensation statutes. Thus in *Gooseby v. Pinson Tire Co.*, 16 S.E.2d 767 (Ga. 1941), where workmen's compensation was denied, the facts showed that the employee's death was proximately caused when he operated an automobile while intoxicated, a misdemeanor, and in excess of 55 miles an hour, also a misdemeanor. The following statement of the court with reference to wilful misconduct (quoting from the

earlier Georgia case of *Aetna Life Ins. Co. v. Carroll,* 150 S. E. 208) is apropos:

> " 'Willful misconduct, or willful failure or refusal to perform a duty required by statute, is more than negligence, or even gross negligence; it involves conduct of a criminal or quasi criminal nature, the intentional doing of something, either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences'.
>
> " *'While generally the mere violation of a statute is negligence, if such statute is a penal statute, and its violation is a crime, the transaction loses its character of negligence, and becomes willful misconduct,* within the meaning of our Compensation Act.' " (Emphasis added.)

*See also Klein v. Trinity Industries, Inc.,* 201 N.W.2d 200 (Neb. 1972); *Banks v. Dept. of Education, supra.* Pertinent here too is the observation of Larsen, *supra,* § 35.30 that:

> "The great majority of cases involving simple violation of traffic ordinances and statutes, such as speed or stop laws, have failed to find wilful misconduct on the strength of the violation.

> \* \* \*

> "Of course, if the violation of statute *is so extreme as to satisfy the language of the statutory defense by its intrinsic character,* and not merely by the technicality of law violation, the defense will apply." (Emphasis added.)

In this connection, the conscious and deliberate violation of a penal statute (which constitutes wilful misconduct of the employee) is the conscious or intentional doing of an act that violates the statute, even though one is not thinking of breaking it:

> "The test of wilful misconduct is not whether one is intending to specifically violate the statute, but

whether he consciously intends to do the act which is violative of the statute." *Gregory, supra. See Aetna Life, supra; Sloss-Sheffield Steel and Iron Co. v. Greer,* 113 So. 271 (Ala. 1927); *Billings v. State Compensation Commissioner,* 16 S.E.2d 804 (W. Va. 1941).

Larsen, *supra,* § 33.20 suggests that "the forfeiture of compensation rights by a workman solely on the strength of a legal fiction ... that everyone knows all the laws, is inconsistent with the usual realistic and practical construction accorded compensation legislation," but he concedes that things are otherwise "of course, when the law is so familiar that knowledge of it is a fact and not a legal fiction." *Idem.* No disservice is done to the purpose or to the "usual realistic" application of the compensation statute by imputing to an employee — as to any citizen — who undertakes to drive while his ability is impaired by alcohol the knowledge that he is in violation of a criminal statute.

Appellant's argument here is, in essence, that for purposes of allowance or denial of benefits under the workmen's compensation statute, when an employee drives or attempts to drive while intoxicated or his driving ability is impaired, no more significance can be attached to the fact of his driving than if he were performing any other job. In other words, under appellant's theory it is immaterial to a determination of entitlement *vel non* to workmen's compensation benefits that the state has prohibited driving while intoxicated or in an impaired condition under the penalty of fine and/or imprisonment. We think it is a gross misreading of the workmen's compensation statute to suppose that it blinds itself to the severe disapprobation with which the State regards driving while intoxicated or impaired.

We hold, on the contrary, that operation of a vehicle — and the statutory prohibition against driving while intoxicated or impaired — is a necessary added factor to be considered when a claim for compensation is presented in the face of uncontradicted evidence of intoxication or impairment from alcoholic consumption. We hold, therefore,

that an instruction is not erroneous which charges the jury that if it finds a claimant's drinking and then driving was a wilful breach of the State law against driving while intoxicated or impaired by alcohol, which conduct proximately caused his injury, then the injury resulted from his wilful misconduct.

Appellant's construction of Art. 101, § 45, as we see it, amounts to the unjustified conclusion that unless wilful misconduct (as distinct from intoxication) is found to be the *sole* cause of injury, benefits may not be denied. The fact, however, that there is evidence before the trier of fact that militates against disallowance of benefits on the ground of intoxication alone is an entirely separate issue from whether recovery must be denied because the claimant assumed control of a vehicle in knowing and reckless disregard of the probable consequences of his inebriation. The authorities cited by appellant merely confirm what is stated in the statute, that where a cause other than intoxication contributed to the employee's injury or death recovery may not be denied.[2] But where the employee deliberately conducts himself in violation of a penal statute prohibiting driving while intoxicated or impaired we do not think he can escape a finding of wilful misconduct just because an additional circumstance (here the retread falling off or perhaps the brake becoming locked) ultimately contributed to his accident. His wilful misconduct is measured not from the moment of the accident but from the moment he assumed control of the vehicle with his faculties impaired by alcohol and charged with knowledge of the probable consequences of his condition.[3]

That wilful misconduct is not the sole cause, but a contributing cause, of the accident does not, of course, make it any less a proximate cause of the accident. *Thomas v.*

---

2. S. Rosenbloom, Inc. v. Willingham, 190 Md. 552, 59 A. 2d 311 (1948); Krell v. Maryland Drydock Co., 184 Md. 428, 41 A. 2d 502 (1945); Larsen, *supra*, § 34.34.

3. As indicated earlier there was expert testimony in the trial below that when appellant left the bar where he had made a delivery and consumed as many as six "boilermakers," his blood alcohol concentration was between 0.18% and 0.24%.

*Corso,* 265 Md. 84, 288 A. 2d 379 (1972); *Yellow Cab Co. v. Bonds,* 245 Md. 86, 225 A. 2d 41 (1966). No more is required by § 45.

*Judgment affirmed; appellant
to pay the costs.*