KARNS *v.* LIQUID CARBONIC
CORPORATION ET AL.
[No. 168, September Term, 1974.]

*Decided May 15, 1975.*

2

The cause was argued before SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Lester H. Crowther*, with whom was *Claude F. McKenzie* on the brief, for appellant.

*Glenn C. Parker*, with whom were *Theodore B. Cornblatt* and *Smith, Somerville & Case* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

Appellant, William J. Karns (Karns), was injured on June 30, 1972, while operating the truck of his employer, appellee, Liquid Carbonic Corporation (Liquid Carbonic). The

Workmen's Compensation Commission found "that the claimant's conduct was wilful due to alcoholic intoxication." For that reason, the claim was disallowed. On appeal to the Circuit Court for Anne Arundel County the jury determined that the injury did not result solely from intoxication but did result from willful misconduct. Accordingly, the determination of the Commission was affirmed. The Court of Special Appeals affirmed in *Karns v. Liquid Carbonic Corp.*, 22 Md. App. 460, 323 A. 2d 642 (1974). We granted the writ of certiorari in order that we might consider the contention of Karns that under the Maryland Workmen's Compensation Act he could not be denied benefits on the basis of willful misconduct if that willful misconduct involved the consumption of alcoholic beverages since the jury had already determined that Karns' injuries did not result solely from his intoxication.

Maryland Code (1957) Art. 101, § 45, in effect on the date of the accident provided:

> "Notwithstanding anything hereinbefore or hereinafter contained, no employee or dependent of any employee shall be entitled to receive any compensation or benefits under this article on account of any injury to or death of an employee caused by self-inflicted injury, the wilful misconduct, or where the injury or death resulted solely from the intoxication of the injured employee." [1]

Related language is found in §§ 15 and 64. By § 15 the act is not applicable "where the injury is occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty." By § 64 there is a presumption "[t]hat the injury did not result solely from the intoxication of the injured employee while on duty."

---

1. By Chapter 300 of the Acts of 1972 an additional provision was added relative to drugs effective July 1, 1972.

4

The facts were summarized by Judge Moore for the Court of Special Appeals:

"Mr. Karns, age 33 at the time of the accident on June 30, 1972, 200 pounds, an experienced truck driver, married, and the father of two children, had been with the appellee-employer for more than ten years at the time of the hearing before the Commission in August, 1972. He was also the shop steward of the Teamsters' Union. The employer ran a dry ice, $CO_2$ cylinder gas business; 75% to 80% of the customers were independent restaurants and bars and approximately 25% of the business was with the Gino's chain. Appellant received a salary plus commission. On the day of the accident, he was driving a 1965 International Truck, van-type, with a load of gas cylinders which weighed approximately 7,000 pounds. This was not his regular vehicle but he had inspected it and found no mechanical defects.

"After lunch, he made a delivery to Glacken's Bar on Pulaski Highway. He was there from 2:25 until about 3:30 during that time delivered 2 cylinders and had some drinks. The barmaid testified that he had as many as six bourbons and beers ('boilermakers'); that he told her in conversation that he 'had been drinking all day' and that he purchased a 'six-pack' of beer before he left. Mr. Karns admitted the purchase but denied that he was a 'drinking man' and testified that he had a total of 'three shots' and 'three small drafts.'

"When he left Glacken's he was supposed to stop next at a Gino's but traffic on the lot prevented him. He proceeded to Old Philadelphia Road (Route 7) intending to 'come back in town and do my next stop there.' The accident occurred after he crossed Big Gunpowder River Bridge, about five miles from his last stop. Appellant testified on cross-examination that it took him 25 minutes to

travel this distance. Before the bridge, he stated, there is a long, steep hill. As he proceeded down the hill, the truck started to swerve. He thought something was wrong with the rear wheels because when he applied the brakes, the truck 'leaned' as if capsizing. He released the brakes, resigned to riding it out, intending to apply the brakes when he reached the bottom. He had difficulty controlling the vehicle and was using both sides of the road as much as possible; there was no other traffic on the road, he said. The heavy gas cylinders had broken loose from their chains and the weight was shifting back and forth. After crossing the bridge at the bottom of the hill, he pumped the brakes. The right rear wheel locked and the truck overturned, spilling its contents on the roadway.

"After the accident, it was ascertained that the retread of one of the right rear dual wheels had peeled off. Mr. Karns testified on cross-examination that this 'caused the truck to jump up and down . . . the cylinders to break loose and the truck to swerve.' The evidence was undisputed, however, that all four rear (dual) tires were still inflated after the accident.

"A sample of appellant's blood was taken, with his consent, at the hospital to which he was removed. The test revealed that at 5:45 p.m. when the sample was taken, the blood alcohol concentration was 0.16%. There was also expert testimony that, at the time of the accident (one hour and 45 minutes before the test) his alcohol concentration was actually between 0.18% and 0.24%. Under Art. 35, § 100, a blood alcohol concentration of 0.10% raises a presumption that the person's driving ability was impaired; at 0.15%, intoxication is presumed.

"There was evidence before the jury that the union contract covering employees of Liquid

Carbonic Corporation provided that drunkenness, drinking during working hours or being under the influence of liquor or drugs during working hours, including lunch time, constituted grounds for immediate dismissal. The Motor Carrier Safety Regulations of the U. S. Department of Transportation, received in evidence, prohibit (§ 392.S) consuming an intoxicating liquor within 4 hours before having physical control of a motor vehicle and being under the influence of an intoxicating liquor while operating a vehicle; even possession of an intoxicating liquor, regardless of its alcoholic content, while operating a vehicle is prohibited." *Id.* at 462-64.

As pointed out by Judge Moore, Code (1957, 1970 Repl. Vol.) Art. 66½, § 11-902 makes it "unlawful for any person to drive or attempt to drive or to be in actual physical control of any vehicle within this State while he is in an intoxicated condition" or "while his driving ability is impaired by the consumption of alcohol."

The Maryland Workmen's Compensation Act was enacted by Chapter 800 of the Acts of 1914. On May 11, 1913, Governor Phillips Lee Goldsborough appointed a commission "to prepare a bill on the question of Employers' Liability and Workmen's Compensation Laws to be submitted to the General Assembly at its session held in 1914." The report of that commission to the Governor, submitted under date of November 15, 1913, recommended the enactment of the appended statute, said to be the Uniform Workmen's Compensation Act, § 4 of which provided:

"No compensation shall be allowed for an injury caused (1) by the employee's wilful intention to injure himself or to injure another, or (2) by his intoxication."

The proposed act contained no section or language concerning presumptions relative to intoxication similar to

that contained in § 61 of Chapter 800 of the Acts of 1914, § 64 in today's act, to which we have made reference. What was enacted by the General Assembly as § 14 of Chapter 800, with the exception of one word, read as does § 15 today. It provided, in language identical to that in present § 15, that the coverage was applicable "except where the injury [was] occasioned by the wilful intention of the injured employe to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employe while on duty." It then went on to provide:

"Where the injury is occasioned by the wilful intention of the injured employe to bring about the injury or death of himself or of another, or where the injury results from the intoxication of the injured employe while on duty, neither the injured employe nor any dependent of such employe shall receive compensation under this Act."

By Chapter 597 of the Acts of 1916 the word "solely," found in § 15 today, was added to that sentence so that it read:

"Where the injury is occasioned by the wilful intention of the injured employe to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employe while on duty, neither the injured employe nor any dependent of such employe shall receive compensation under this Act."

The original act provided in § 45, the antecedent of today's § 45:

"Notwithstanding anything hereinbefore or hereinafter contained, no employe or dependent of any employe shall be entitled to receive any compensation or benefits under this Act, on account of any injury to or death of an employe caused by a self-inflicted injury, the wilful misconduct or the intoxication of such employe."

This, too, was amended by Chapter 597 of the Acts of 1916 so that it read (then called § 46):

> "Notwithstanding anything hereinbefore or hereinafter contained, no employe or dependent of any employe shall be entitled to receive any compensation or benefits under this Act on account of any injury to or death of an employe caused by self-inflicted injury, the wilful misconduct, or where the injury or death resulted solely from the intoxication of the injured employe."

Since § 61 of the original act provided that there was a presumption "[t]hat the injury did not result solely from the intoxication of the injured employee while on duty," as does § 64 today, the amendments in 1916 really only brought all of the language of the act in line with § 61.

The first case to come before the Court on the subject of intoxication after the enactment of the Workmen's Compensation Act in 1914 was *American Ice Co. v. Fitzhugh*, 128 Md. 382, 97 A. 999, 1917D Ann. Cas. 33 (1916). The Court said relative to the facts in that case:

> "The evidence shows that Seymour Fitzhugh was employed by the appellant, the American Ice Company, as driver of a two-ton ice and coal wagon; that his duties also required him to load and unload the wagon, and that on the 12th of December, 1914, while driving the wagon of the company, loaded with oysters shells, along North avenue in Baltimore City he fell or was thrown from the wagon and killed. The ice company offered evidence tending to show that he was drunk at the time of the accident, and that the accident was due to his intoxication." *Id.* at 386.

The portion of the opinion pertinent to the question here at hand concerned the propriety of the ruling of the trial court on prayers. The jury had been instructed:

> " 'If they shall find from the evidence that the deceased, Seymour Fitzhugh, met his death in an

accident while in the employ of the American Ice Company, and in the course of his said employment, and that his said death was not due to any self-inflicted injury, or willful misconduct, or intoxication on the part of the said Seymour Fitzhugh, then the verdict of the jury must be for the claimants. And the jury are further instructed that it is presumed by the law, in the absence of substantial evidence to the contrary, that the death of said Seymour Fitzhugh was not occasioned by his willful intention, and that his said death did not result solely from intoxication while on duty.' " *Id.* at 390-91.

The Court approved that prayer. The employer had offered prayers of which the Court said:

"These prayers ignore the provision of the Act which disentitles the employee to recover only where intoxication is the *sole cause* of the injury which results in death. The prayers properly present the defense of contributory negligence applicable to ordinary cases of negligence, but the Act in question was designed to abolish the defense of contributory negligence in cases falling within its provisions, and it is only where intoxication is the *sole cause,* and not the contributing cause of the injury that it can be relied on as a defense to the claim of the employee or his dependents. In other words under the terms of the Act the injury for which compensation is sought must be due exclusively or entirely to the intoxication of the employee in order to constitute a defense to the claim. Sub-section 7 of section 61 declares that 'death,' referred to as the basis of compensation under this Act, means 'only death resulting from such injury,' and where the *injury,* which results in the death of the employee, results solely from intoxication the defendants are not entitled to compensation." *Id.* at 391-92 (Emphasis in original.)

On motion for modification of the opinion the Court said:

"Where, therefore, the intoxication of the injured employe is relied on as a defense, it must be made to appear that the injury, that is to say the *accident* which resulted in the *injury* for which compensation is sought, was caused *solely* and *exclusively* by the intoxication of such employe. In other words, the injury for which compensation is required is the *'accidental personal injury'* of the employe resulting in his 'disability or death,' except where such *injury,* or the *accident* resulting in such injury, is attributable *solely* and exclusively to 'the intoxication of the injured employe while on duty.' " *Id.* at 393. (Emphasis in original.)

In *S. Rosenbloom, Inc. v. Willingham,* 190 Md. 552, 59 A. 2d 311 (1948), the employee drove his car on to the Chesapeake Bay Ferry at Matapeake. A ferry employee drove it off at Sandy Point and parked it about 75 feet beyond the ferry slip, facing in the direction of Baltimore. He had noticed that Willingham staggered slightly when he left the car at Matapeake, but he staggered more than ever and came down the wrong stairway when the ferry reached Sandy Point. The wife testified that in their 20 years of married life she had never seen her husband intoxicated. About 35 minutes after the ferry left Sandy Point on its return trip to Matapeake the employee drove his car overboard and was drowned. The police officer who attempted to revive him did not detect any odor of alcohol or find any bottle on his person. Among the objects that fell from the vehicle when it was recovered was a half-pint bottle of whiskey, still containing one drink. The employer contended that compensation should be denied on the ground that death was due solely to intoxication while on duty. Judge Henderson there said for the Court:

"There was no evidence that would supply any motive for suicide. Compare *Krell v. Maryland Drydock Co.,* [184 Md. 428, 41 A. 2d 502 (1945)]. No

one saw the decedent take a drink. His conduct may have been due to alcohol or something else. Even if we should draw the inference that he was intoxicated, we think the evidence falls short of establishing that intoxication was the sole cause of the accident, as required by the statute. Compare *Southern Can Co. v. Sachs*, 149 Md. 562, 131 A. 760, 43 A.L.R. 417; *Baltimore Dry Docks & Shipbuilding Co. v. Webster*, 139 Md. 616, 628, 116 A. 842, and *American Ice Co. v. Fitzhugh*, 128 Md. 382, 97 A. 999, Ann. Cas. 1917D, 33. That intoxication was a contributing cause is not sufficient, it must be the exclusive cause. The action of the decedent was more suggestive of dementia than intoxication. We cannot say that the trial court was clearly wrong in finding that causes other than intoxication played a part in the accident." *Id.* at 558.

*Smith v. State Roads Comm.*, 240 Md. 525, 214 A. 2d 792 (1965), involved the death of an employee of that commission in an accident in which his pickup truck went off of Liberty Road and struck a telephone pole, causing the employee's death. As Judge McWilliams put it for the Court:

"In the case before us the fact of intoxication, if not actually admitted, is established, for the first time in Maryland, by evidence which is both overwhelming and unchallenged. Whether or not the trial judge was clearly erroneous in concluding that the death of Smith resulted solely from his intoxication is the issue raised by appellant's principal contention and the one which we shall consider first." *Id.* at 529.

The case was tried in the Baltimore City Court without a jury. The trial judge found that death resulted solely from the intoxication of the employee. The evidence showed the presence of 0.27% alcohol in his blood. There was no evidence of any mechanical defect in the vehicle nor any evidence of malfunction in its operation. There was no evidence of

blowout or other tire trouble nor of any defect in the road. Applying what was then Maryland Rule 886 a (now Rule 886), the Court stated that it could not say that the trial judge's finding that intoxication was the sole cause of the accident was clearly erroneous and thus affirmed the judgment. Judge McWilliams also said for the Court:

> "Appellant argues that where intoxication and the hazards of the employment concur the claimant *must* prevail; that Smith, even though intoxicated, was in the course of his employment and compensation cannot be denied his widow. If appellant is right, then the Maryland statute is meaningless and we do not agree that it is meaningless. We agree with the New Jersey court that if the employment does no more than supply the setting, the stage or the situation in which the injury occurs, if it is no more than an inactive condition and not a moving cause, compensation must be denied. Concurrence of intoxication and the setting, alone, is not enough. There must be in addition, if compensation is to be awarded, some active or moving or contributing cause." *Id.* at 534-35. (Emphasis in original.)

In *Balt. Car Foundry Co. v. Ruzicka*, 132 Md. 491, 104 A. 167, 4 A.L.R. 113 (1918), the Court first faced the issue of willful misconduct. The employee was crushed in the car-erecting shop of his employer. As he was starting to leave the shop on his way to his home he tried to pass between two of a number of finished cars standing at intervals on the track and ready to be coupled together and drawn out of the shop by an engine which had been brought to the end of the building for that purpose. The Court said:

> "It is, of course, perfectly clear that the fatal accident we have described was the result of Ruzicka's own negligence. But we agree with the Court below and the State Industrial Accident Commission in the opinion that the highly

imprudent act which caused the unfortunate man's death is not properly to be characterized as willful misconduct. It lacked the element of intentional impropriety which those words imply. It was a thoughtless and heedless act, but not a willful breach of a positive rule of conduct or duty." *Id.* at 493-94.

\* \* \*

"In the present case it is evident that the death of Ruzicka was due to his erroneous assumption that there was sufficient time for him to pass between the cars before they were moved. There was in fact ample time for that purpose when he started to cross, but when, after his progress had been interrupted by the conversation in which he became engaged with another workman, he resumed his forward movement, he apparently failed to realize how long he had been delayed. This was a very serious lapse of memory and judgment. It led him into an imminent peril which he could readily have avoided by ordinary attention. But in thus neglecting to have proper regard to his safety he was not, in our opinion, guilty of *willful misconduct* within the purview of the Workmen's Compensation Law, which, except in cases of injury produced by *such* misconduct or self-inflicted, or due to intoxication, provides compensation for the disability or death of employees resulting from accidental personal injury arising out of and in the course of the employment 'without regard to fault as a cause of such injury.' " *Id.* at 495. (Emphasis in original.)

In *Beasman v. Butler,* 133 Md. 382, 105 A. 409 (1918), there was evidence adduced tending to prove that the accident on which the claim was based was the result of an unsuccessful effort made by the claimant to climb on the side of a motor truck as it passed him on a roadway. The Court referred to *Baltimore Car Foundry* and said:

"If the appellee in the case at bar in fact attempted to climb upon the side of the passing motor truck, which was moving at the rate of five or six miles an hour, according to the testimony, his act was undoubtedly reckless. But it would not be proper to rule as a matter of law that his sudden and heedless effort to board the truck was 'wilful misconduct' within the adjudicated meaning of those words, and to direct a verdict against him on that theory. By an appropriate instruction the question of 'wilful misconduct' was submitted to the jury for their consideration. The prayer which would have required them to thus characterize the act referred to was properly rejected." *Id.* at 387-88.

In *Harris v. Dobson & Co.*, 150 Md. 71, 132 A. 374 (1926), employees had been told at the end of work on a Saturday not to go back into a ditch on Monday until it was shored up. The foreman was not present on Monday when certain of the employees reported for work. Harris, stating that he had nothing else to do, went into the ditch and was killed when dirt fell in and crushed him. The State Industrial Accident Commission found that the death was not caused by an accident arising out of and in the course of the deceased's employment and that he had been guilty of willful misconduct causing the accident. On appeal, the Superior Court of Baltimore City found against the claimant solely on the ground of willful misconduct by the deceased. The matter was tried by the court, without a jury. Under the practice then prevailing questions of fact were not before this Court for review. This Court said the trial court refused to declare as a matter of law "that there was no evidence legally sufficient to show wilful misconduct on Harris' part, and, at the same time refused to declare . . . that wilful misconduct was shown by uncontradicted evidence." It did grant prayers to the effect that the claimant was "entitled to recover, on other facts subsequently found by the court 'unless the court, sitting as a jury, further f[ound] that by his own wilful misconduct, the said [employee] intended to

place himself in a position whereby he might expect to meet with injury or death, and in carrying out such intention, met his death as the result of the injuries received by him.'" It also declared "that if it were found that on returning to work Monday morning [the employee] did not wait as ordered by the foreman on Saturday, but worked in the ditch and was killed by the caving in, still, '[the widow was] entitled to compensation, unless the court, sitting as a jury, further f[ound] that the failure to follow said instructions constituted such wilful misconduct on the part of the deceased, [employee], as to show that he intended thereby to place himself in such a hazardous position that injury or death might result as the reasonable consequence of his act.'" The Court said:

> "There was evidence here that the workman who was killed went into the ditch after having been twice warned not to do so until it was shored up. When he came to work it had not been shored up, there was no one there to shore it up, and no one to give him orders. And, according to all the evidence, he and his fellow workman, Manley, went into the ditch because they had nothing else to do. They appear to have assumed that they must work, not thinking of the alternative of temporary idleness, and their mistake might be described as one of misjudgment, rather than that of misconduct. The decision of the question whether, on the uncontradicted evidence, it amounted to wilful misconduct, within the meaning of the statute, is not free from difficulty. However, the commission, which is a body of men in touch with such practical work, viewed it as wilful misconduct, and, this being true, we have concluded that in this case the lower court was right in taking the question up as one of fact, instead of disposing of it as a question of law on the prayer submitted for that purpose. We find that the court, in granting the prayers which it did grant, stated the principles of law

governing the decision on the facts, at least as favorably to the claimant as she was entitled to have them stated; and there was, therefore, no reversible error in any rulings on the prayers." *Id.* at 76-77.

In *Red Star etc. Coaches v. Chatham,* 163 Md. 412, 163 A. 886 (1933), a bus driver was found dead in the garage of his employer a short time after the scheduled time for the departure of the bus of which he was the driver. The motor of the bus was running and all the doors and windows of the garage were closed. The testimony of the physicians was that the cause of death was carbon monoxide poisoning. The State Industrial Accident Commission found the death to be the result of willful misconduct. The jury found for the claimant. The matter was before the Court on the refusal of the trial court to rule as a matter of law that the deceased employee was guilty of willful misconduct. The Court pointed out that taking the testimony as a whole the jury could have found that when the superintendent testified that he communicated to employees rules against sleeping in buses and starting of the engine when doors and windows were closed "he might have been thinking of [the employee] as one of a group and taken for granted that he was present when [the] witness talked with the group; or that [the] witness, remembering that he had spoken to the men as he 'would individually see the several men,' might have thought he had spoken to the decedent personally, and yet it was quite possible that he missed this particular man. Besides, the jury had the right to disbelieve [the employer's] witnesses." It further said:

> " 'As was stated in the opinions in those cases [*(Baltimore Car Foundry, Beasman,* and *Harris)*], not all violations of rules or orders amount to wilful misconduct which, under the statute, disentitles an injured workman to compensation. Few operations, perhaps none, can be carried out in strict accordance with rules and orders. Some departures in practice are inevitable. And we must assume

that the Legislature had this in mind, and did not intend to deny compensation for injuries resulting from such ordinary departures. The very words 'wilful misconduct,' in their general acceptation, mean something else. The distinction has been variously expressed, but, while the expressions are helpful, we are not prepared to accept any of them as giving final definitions. We must, of course, avoid restricting the words of the statute by explanations adopted in particular cases. That wilful misconduct may consist in disregard of rules or orders has been decided in many cases. *Baltimore Car Foundry Co. v. Ruzicka, supra;* authorities collected in 23 A.L.R. 1168, and 26 A.L.R. 166. But there must be something more than thoughtlessness, heedlessness, or inadvertence in it. There must be, at least, a wilful breach of the rule or order. *Baltimore Car Foundry Co. v. Ruzicka, supra; Gonier v. Chase Companies,* 97 Conn. 46, 57, 115 A. 677, 19 A.L.R. 83; *Mancini v. Scovill Mfg. Co.,* 98 Conn. 591, 119 A. 897.'

"It cannot be said that it was established, as a matter of law, that the decedent was advised of the alleged rules and appreciated the danger; or that, if he did, any disregard of them by him was deliberate and wilful." *Id.* at 416-17.

From the cases on intoxication one distills that when an employer relies upon intoxication as a defense an employee to recover compensation must show that his employment contributed to the occurrence of the accident, that "[c]oncurrence of intoxication and the setting, alone, is not enough." To bar the employee on this ground from recovering compensation the intoxication must be the sole cause of the injury. It is not sufficient that it is a contributing cause. In this regard the employer has the burden of overcoming the statutory presumption "[t]hat the injury did not result solely from the intoxication of the injured employee while on duty."

From the cases on willful misconduct one learns that not all violations of rules or orders amount to willful misconduct, that the General Assembly "did not intend to deny compensation for injuries resulting from . . . ordinary departures" from rules, that "there must be something more than thoughtlessness, heedlessness, or inadvertence in" the employee's conduct to deny him compensation. The mere fact that he neglected to have proper regard for his own safety is not sufficient to bar him.

We have said that a hornbook rule of statutory construction is that in ascertaining the intention of the General Assembly, all parts of a statute are to be read together to find the intention as to any one part and that all parts are to be reconciled and harmonized if possible and that a corollary rule of construction is that if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence, or phrase shall be rendered surplusage, superfluous, meaningless, or nugatory. *See, e.g., Kadan v. Bd. of Sup. of Elections,* 273 Md. 406, 415, 329 A. 2d 702 (1974); *A. H. Smith Sand & Gravel v. Dep't,* 270 Md. 652, 659, 313 A. 2d 820 (1974); *Anne Arundel County v. Moushabek,* 269 Md. 419, 426, 306 A. 2d 517 (1973); *Parker v. Junior Press Printing,* 266 Md. 721, 725, 296 A. 2d 377 (1972); *Prince George's County v. Beard,* 266 Md. 83, 91, 291 A. 2d 636 (1972); *Baltimore City v. United Stores,* 250 Md. 361, 368, 243 A. 2d 521 (1968); and *Thomas v. Police Commissioner,* 211 Md. 357, 361, 127 A. 2d 625 (1956).

It must be borne in mind in the current case that the only misconduct alleged relates to intoxication. It is easy enough to conceive of bases for the jury's reasoning in this case. It might well have reasoned that it could not say that intoxication was the *sole* cause of the injury because it believed the testimony of Karns relative to the shifting load in the truck which it believed contributed to the accident, thus not making intoxication the *sole* cause of the accident, and yet the jury might have believed that without the impairment of his faculties by the alcohol he had consumed in violation of law and company regulations he would have

been able to cope with the shifting load, thereby making the injury one caused by his misconduct, his drinking. The problem comes when one attempts to read the statute "so that no word, clause, sentence, or phrase shall be rendered surplusage, superfluous, meaningless, or nugatory." We regard intoxication as willful misconduct. This point of view is reinforced by statements in *In re Von Ette*, 223 Mass. 56, 111 N. E. 696, 1916D L.R.A. 641 (1916); and *Frazer v. Riddell* [1914] S. C. 125, [1913] 2 Scot. L. T. 377, 51 Scot. L. R. 110, 7 B.W.C.C. 841. The statements in both of those cases to which we refer are dicta. Nevertheless, they are highly persuasive. In *Von Ette* the Supreme Judicial Court of Massachusetts said:

> "If the deceased met with his injury by reason of his serious and willful misconduct, no compensation can be awarded, and it may be conceded that if he voluntarily took his life, or if his fall from the roof was due to a condition of intoxication the ruling requested [(that no compensation could be awarded)] should have been given." *Id.* 111 N. E. at 697.

In *Frazer* it was said in the case stated that when the employee began his duties on the date in question "he was sober," but "[a]t the time of the said accident he was under the influence of drink and was unfit for his work." The matter under discussion was whether the accident arose "out of and in the course of his employment, but which was brought about by his serious and wilful misconduct, namely, his intoxicated condition? or did the injury by accident arise whilst 'in the course of' his employment but not 'out of' his employment?" The Lord President said:

> "A man may be engaged in the performance of his work and an accident may occur incidental to his work, and therefore 'out of' his employment, even although he is in a state of intoxication so great as to be, in the opinion of ordinary people, unfit for the performance of his work. If an accident befalls

him under these conditions, it appears to me that, owing to his intoxicated condition, it is rightly called an accident due to serious and wilful misconduct, but it is none the less an accident arising 'out of' his employment, because it is incidental to it." *Id.* 7 B.W.C.C. at 844-45.

*See also Aetna Life Ins. Co. v. Carroll,* 169 Ga. 333, 150 S. E. 208, 211 (1929); *Gooseby v. Pinson Tire Co.,* 65 Ga. App. 837, 16 S.E.2d 767, 769 (1941); *Banks v. Dept. of Education,* 462 S.W.2d 428 (Ky. 1971); *Williams v. Llandudno Coaching, etc., Co.,* [1915] 2 K. B. 101, 31 Times L. R. (Eng.) 186, 84 L.J.K.B.N.S. 655, [1915] W.C. & Ins. Rep. 91, [1915] W. N. 52, 59 Sol. Jo. 286, 8 B.W.C.C. 143, 147; 99 C.J.S. *Workmen's Compensation* § 263 at 908 (1958); and 58 Am. Jur. *Workmen's Compensation* § 207 (1948). The fact that there are not more cases on this subject is undoubtedly explained by the statement in 1A Larson, *Workmen's Compensation* § 34.31 at p. 6-62 (1973) that "[t]hirty-six states make intoxication the basis of a separate defense, and three others make it a ground for reduction in the amount of the award."

We can conceive of situations in which a jury might find that an accident was not caused solely by an employee's intoxication and yet find him to have been guilty of some willful misconduct other than intoxication which might reasonably be said to be a proximate cause of the accident. It must be borne in mind that there may be more than one proximate cause of an accident. *Thomas v. Corso,* 265 Md. 84, 103-04, 288 A. 2d 379 (1972); *Hillebrecht v. Stein,* 245 Md. 93, 96, 225 A. 2d 44 (1966); and *Yellow Cab Co. v. Bonds,* 245 Md. 86, 90, 225 A. 2d 41 (1966). Here, however, the only suggested willful misconduct involves intoxication. Moreover, we regard it as highly significant that the original proposal for a workmen's compensation act called for barring an employee from receiving compensation where the "injury [was] caused ... by his intoxication," with no mention of any type of willful misconduct other than intoxication as a bar and no presumption written into it relative to intoxication, but what was enacted by the

General Assembly barred the employee on the basis of willful misconduct "or the intoxication of such employe" with a presumption written into the statute "[t]hat the injury did not result solely from the intoxication of the injured employe while on duty." The General Assembly punctuated that statement when it added to the present § 45 at the very next session in line with that presumption that an employee is barred from receiving compensation if his injury results from his willful misconduct or "result[s] solely from the intoxication of the injured employe."

With the language of the statute as it is and with the legislative history behind that language, we conclude that the trial judge erred under the facts of this case in submitting to the jury as issue number one whether the claimant's injury resulted solely from his intoxication and as issue number two whether the injury resulted from his willful misconduct and then instructing the jury on the latter point that if it "f[ound] that the drinking and driving was a willful breach of a rule or order of his employer or of the Maryland law against driving while the ability [was] impaired and if [it] f[ound] that as a result of this disregard of the rule or order or the law a chain of events developed which caused the accident in question, then [it] must find that the accident resulted from his willful misconduct." Accordingly, we shall award a new trial.

> *Judgment of Court of Special Appeals reversed and case remanded for passage of an order reversing the judgment of the Circuit Court for Anne Arundel County and remanding the case for a new trial; appellee to pay the costs.*